### In re FULDA INDEPENDENT CO-OP, Debtor.

James CHRISTENSEN, Paul Reith, Dale Bergman, Donald M. Reith, Randy C. Holinka, Ronald J. Holinka, Spencer Enninga, Marvin Storm, Daniel Fischer, Walter Ruesch, Gerald Duerr, Loren Heintz, Henry Van Der Linder, Elden Getting, Larry J. Jorgensen, Pierson Grain Farms, Thomas Ahlers, Clarence Van Mekeren, Lyle G. Busch, Kevin Busch, Terry Appel, Va Lonne Verdugt, Verlyn Ommen, Roland Buschena, Donald Kramer, Arvin Dierks, Grayson Nantkes, Jessy Nantkes, Timothy M. Daniels, E. Kremer & Sons and Robert E. Crowley, Myron Wintermantel, Plaintiffs,

v.

ST. PAUL BANK FOR COOPERATIVES, Defendant.

Bankruptcy No. 3–89–4422.

Adv. No. 3–90–83.

United States Bankruptcy Court, D. Minnesota, Third Division.

Sept. 10, 1991.

Thomas P. Melloy, Dorraine A. Mund, Roger J. Nierengarten, of counsel, Hall, Byers, Hanson, Steil & Weinberger, P.A., St. Cloud, Minn., for plaintiffs.

Gordon B. Conn, Jr., Faegre & Benson, Minneapolis, Minn., Phillip Erickson, Farm Credit Bank of St. Paul, St. Paul, Minn., for defendant.

GREGORY F. KISHEL, Bankruptcy Judge.

This Court has entered an order granting Plaintiffs' motion for abstention and remand to the Minnesota State Courts as to the majority of the counts of their complaint, and, *sua sponte*, dismissing the remaining counts with prejudice to their renewal by Plaintiffs. This memorandum is entered to set forth the rationale underlying the grants of relief in that order.

## HISTORY OF DEBTOR'S BANKRUPTCY CASE, AND CURRENT POSTURE OF THIS LAWSUIT

Debtor, a Murray County, Minnesota agricultural cooperative, filed a voluntary petition under Chapter 7 on November 15, 1989. Defendant, a federal corporation which is part of the Farm Credit System,[1] was Debtor's principal secured creditor. At all relevant times, all of the named Plaintiffs were engaged in farming in and around Murray County, and were patrons of Debtor.

In early December, 1989, the trustee of Debtor's bankruptcy estate brought on a motion for authority to sell certain of Debtor's real and personal property to various buyers, free and clear of the claimed liens of Defendant, another secured claimant, and various taxing authorities. As part of this motion, the trustee requested court approval of a settlement of all of Defendant's claims against the estate.[2] Under the settlement, Defendant agreed to accept the transfer of certain real property and the proceeds of sale of other property, in return for a full satisfaction of its claim against the estate.[3]

Given the exigencies of the situation, the Court entertained the motion on an expedited basis and, in the absence of objections, granted it. The Trustee later requested Defendant to extend the deadline for the closing of the various asset sales; Defendant granted the extension, the sales then closed, and the settlement was fully consummated by the end of January, 1990.

This lawsuit was commenced as an action venued in the Minnesota State District Court for the Fifth Judicial District, Murray County. Plaintiffs effected service of their summons and complaint on Defendant on May 1, 1990.

In their complaint, Plaintiffs allege, among other things, that:

1. In the fall of 1988, they all purchased seed, fertilizer, and other crop inputs from Debtor, and paid for those purchases "in accordance with their usual and customary practice."

2. They "stored the products they had purchased and paid for" on Debtor's premises "until they were needed in the spring of 1989."

3. In mid-March, 1989, Defendant, after deeming itself insecure, "took control of the assets of [Debtor] and assumed control of the operation of the business," in the process seizing the products which Plaintiffs allege they had purchased from and "stored with" Debtor.

4. During a series of meetings with Debtor's patrons during April, 1989, representatives of Defendant demanded additional payment to Debtor in an amount equal to 50 percent of the previously-paid purchase price, as a condition of the physical surrender of the supplies to Plaintiffs.

5. Given their "immediate and urgent need for their supplies," they paid these amounts to Debtor, apparently under protest.

1. For description of the legal nature and function of the Farm Credit System, *see In re Solberg*, 125 B.R. 1010, 1013 at n. 3 (Bankr.D.Minn. 1991).

2. The terms of this settlement had actually been negotiated before Debtor's bankruptcy, by Defendant and Debtor's board; various written memorializations of the settlement had been executed by Debtor's president. When Debtor's board failed to get the concurrence of an appropriate majority of Debtor's patron-members as required under Minnesota law, the board voted to put Debtor into Chapter 7. The Trustee essentially ratified the settlement agreement in all of its terms and presented it as a package to the Court in the motion.

3. The agreement recited the full amount of the debt as $1,809,776.97. It provided that Defendant would forgive a specific debt of approximately $150,000.00, and satisfy all remaining debt by crediting the value of Debtor's equity shareholding in Defendant, if the various sales and transfers of assets and funds were completed by December 31, 1989. No one has disputed the Trustee's assertion that the settlement as a whole benefitted the estate, by eliminating Defendant's potential deficiency claim, thereby making assets available to other, smaller claimants.

6. Debtor later turned over these funds to Defendant, for application to its debt.

7. In "approximately July of 1989," Defendant induced Debtor to transfer a number of motor vehicles "and other rolling stock," in a transaction through which the purported consideration was Defendant's release to Debtor of certain funds otherwise subject to its liens. Plaintiffs allege that Defendant did not have a perfected security interest in the vehicles, that Debtor was insolvent at the time of the transfer, and that any value received by Debtor for the transfer was "substantially" less than the value of the vehicles.

As relief, Plaintiffs request an award of damages in the amounts which they allege Defendant forced them to pay to it in the spring of 1989. They frame their causes of action as sounding in conversion, fraud, and intentional or negligent misrepresentation. As an additional request for relief based on the summer, 1989 vehicle transfer, they request an award of damages for what they characterize as a fraudulent transfer under Minnesota state law.

On May 16, 1990, Defendant removed this lawsuit to this Court by filing an application for removal pursuant to 28 U.S.C. § 1452(a). Defendant has since filed an answer, in which it has joined several defenses: lack of standing on the part of Plaintiffs to prosecute a fraudulent-conveyance cause of action, given Debtor's status as a petitioner under Chapter 7; the unavailability of a conversion cause of action to Plaintiffs, due to Defendant's status as a secured party holding an unextinguished security interest in the supplies in question; the equitable entitlement of Defendant to recover the amount of any judgment in Plaintiffs' favor from the bankruptcy estate, pursuant to the settlement with the estate; the barring of Plaintiffs' claims by the equitable doctrines of unclean hands and equitable estoppel; and the standard boilerplate legal and equitable defenses of waiver, estoppel, laches, and accord and satisfaction.

Plaintiffs then brought on the present motion, in which they seek to remove this lawsuit from the authority, jurisdiction, and purview of the Bankruptcy Court on a number of alternative theories. They request remand to the Murray County District Court on the purely technical ground that Defendant filed its application for removal with the Clerk of this Court, pursuant to former LOC.R.BANKR.P. (D.MINN.) 103(a), rather than with the Clerk of the District Court—which, they argue, was required under 28 U.S.C. § 1452(a) and FED. R.BANKR.P. 9027(a). As an alternative, they request remand on the ground that this lawsuit is neither a "core proceeding" within the meaning of 28 U.S.C. § 157(b), nor a "related proceeding" within the meaning of 28 U.S.C. § 157(c), and that the federal courts therefore lack jurisdiction to entertain it under 28 U.S.C. § 1334(b) or any other statute. As a second alternative, they request remand on equitable grounds pursuant to 28 U.S.C. § 1452(b). As a third alternative, they argue that this lawsuit is not a "core proceeding," and that it is subject to mandatory abstention under 28 U.S.C. § 1334(c)(2). As a fourth alternative, they request discretionary abstention under 28 U.S.C. § 1334(c)(1). As a fifth alternative, Plaintiffs request a determination that they have the right to trial by jury on their claims against Defendant, and that this Court therefore must transfer this adversary proceeding to the District Court pursuant to former LOC.R.BANKR.P. (D.MINN.) 103(d) and (e). Finally, if this adversary proceeding is determined to be a "related proceeding," they request that it be transferred to the District Court pursuant to 28 U.S.C. § 157(d) and former LOC. R.BANKR.P. (D.MINN.) 103(e), because they do not consent to trial and final disposition of this adversary proceeding by a Bankruptcy Judge.

## DISCUSSION

I. Statutory Framework: Federal Jurisdiction, Final Decision–Making Authority, and Exercise Thereof.

■ Defendant's removal of this lawsuit to this Court, and Plaintiffs' present mo-

tion, are governed by the several complex statutes which establish the federal courts' jurisdiction over bankruptcy cases and proceedings. The United States district court has exclusive jurisdiction over bankruptcy cases, 28 U.S.C. § 1334(a), and has "original but not exclusive jurisdiction of all civil proceedings arising under [the Bankruptcy Code], or arising in or related to cases under [the Bankruptcy Code], 28 U.S.C. § 1334(b).[4] The district court is empowered to refer any or all bankruptcy cases and "any or all proceedings arising under [the Bankruptcy Code] or arising in or related to a case under [the Bankruptcy Code]" to the bankruptcy judges for the district, 28 U.S.C. § 157(a), which judges collectively constitute a "unit of the district court to be known as the bankruptcy court for that district," 28 U.S.C. § 151. In the District of Minnesota, this referral has been accomplished by former Loc. R.Bankr.P. (D.Minn.) 103(b), and current Loc.R.Bankr.P. (D.Minn.) 201.

A bankruptcy judge has full authority to enter final orders and judgments in all "core proceedings" arising under the Bankruptcy Code, or arising in bankruptcy cases. 28 U.S.C. § 157(b)(1). The Judicial Code does not define the term "core proceeding," but sets forth a non-inclusive, illustrative list of types of core proceedings in 28 U.S.C. § 157(b)(2). In so-called "related proceedings"—that is, proceedings that are not core proceedings, "but that [are] otherwise related to a case under [the Bankruptcy Code]"—the identity of the federal judicial officer who may exercise final decision-making authority is determined by the parties' consent. If all parties to the related proceeding consent, the bankruptcy judge may "hear and determine" the proceeding, and enter final order or judgment in it. 28 U.S.C. § 157(c)(2). If, on the other hand, one or more parties do not consent to entry of final order or judgment by a bankruptcy judge, the bankruptcy judge is empowered only to hear the proceeding, and then must submit proposed findings of fact and conclusions of law, subject to *de novo* review by the District Court upon timely objection by any interested party. 28 U.S.C. § 157(c)(1); Fed. R.Bankr.P. 9033. In the District of Minnesota, the bankruptcy judge has authority to transfer such a proceeding to the District Court, for hearing before and decision by a District Judge. *See* former Loc.R.Bankr.P. (D.Minn.) 103(e) and current Loc. R.Bankr.P. (D.Minn.) 204(a).

■ A party to a civil action pending in a nonbankruptcy forum may remove claims or causes of action involved in that action to the bankruptcy forum, if the federal court to which removal is made has "core-proceeding" or "related-proceeding" jurisdiction under 28 U.S.C. § 1334 over the claims or causes of action. 28 U.S.C. § 1452(a). In turn, "[t]he court to which such claim or cause of action is removed may remand such claim or cause of action on any equitable ground." 28 U.S.C. § 1452(b).

■ Finally, bankruptcy judges[5] have discretionary authority to abstain from

---

4. In and of itself, the bankruptcy "case," commenced by the filing of a petition under 11 U.S.C. §§ 301–303, is not an adversarial proceeding in the classic court-procedural sense; rather, it can best be seen as a framework for the invocation of federal jurisdiction over disputes between and among the debtor, its creditors, and other parties in interest. *In re Arctic Enterprises, Inc.*, 68 B.R. 71, 76 at n. 4 (D.Minn. 1986); *In re Northwest Cinema Corp.*, 49 B.R. 479, 480 at n. 4 (Bankr.D.Minn.1985). Once put into suit as contested matters or adversary proceedings, these disputes have all the trappings of civil litigation, and constitute "proceedings" within the meaning of the jurisdictional grant. *In re Marine Iron & Shipbuilding Co.*, 104 B.R. 976, 980 (D.Minn.1989).

5. Prior to December 1, 1990, the Bankruptcy Rules provided that motions for abstention and/or remand were to be heard in the first instance by a bankruptcy judge, who then was to make a report and recommendation for the disposition of the motion to the district court. *See* former Bankr.R. 5011(b) and 9027(e). The district judge was then to enter a final order. *Id.* It has been suggested that this procedure was promulgated to avoid a constitutional challenge to the former provisions of 28 U.S.C. §§ 1334(c) and 1452(b), which made a final abstention or remand order nonappealable from the court which entered it. *In re Hanson Industries, Inc.*, 83 B.R. 659, 667 (Bankr.D.Minn. 1988). In any event, in the Judicial Improvements Act of 1990, signed by the President on December 1, 1990, 28 U.S.C. §§ 1334(c)(2) and

hearing and deciding a proceeding arising under the Bankruptcy Code or arising in or related to a case under the Bankruptcy Code, where such abstention would be "in the interest of justice, or in the interest of comity with State courts or respect for State law." 28 U.S.C. § 1334(c)(1). They are mandated to abstain from hearing and deciding "related proceedings," if there is no basis for federal jurisdiction over the proceeding other than as a "related proceeding," and if the proceeding "can be timely adjudicated, in a State forum of appropriate jurisdiction." 28 U.S.C. § 1334(c)(2).

## II. Classification of This Lawsuit as Core Proceeding or Related Proceeding.

The outcome of many of the aspects of Plaintiffs' present motion hinges entirely on whether the requests for relief in their complaint are core proceedings, related proceedings, or neither. This, then, is the threshold issue in the present motion. A bankruptcy judge has full authority to decide this issue. 28 U.S.C. § 157(b)(3).

Plaintiffs' complaint actually encompasses three different causes of action.

In Counts I through III, Plaintiffs request an award of damages for Defendant's alleged conversion of the agricultural supplies.

In Counts IV through VI, they request an award of damages, in an aggregate amount equal to the lesser of the total amount of their conversion damages, or the total sale proceeds which Defendant received in consequence of Debtor's July, 1989 transfer of vehicles to it.[6] Plaintiffs allege that Defendant induced Debtor to make this transfer with actual intent to defraud Debtor's other creditors; as authority for the relief which they request,

they cite various provisions of the Minnesota enactment of the Uniform Fraudulent Transfer Act, MINN.STAT. §§ 513.45 et seq.

Finally, in Counts VII and VIII, Plaintiffs pray for an award of their actual damages, in the amount of their payment to Debtor and additional amounts to be proven at trial, for the harm which they allege they suffered as a result of Defendant's alleged actual fraud or negligent misrepresentation in holding out that it had the absolute right to seize the supplies and to take the other actions which it did in relation to Plaintiffs.

These are, indeed, three separate causes of action, each of them founded upon a distinct nexus of fact and a discrete legal theory. For the threshold inquiry, each cause of action is a separate "proceeding."

■ Plaintiffs' second cause of action is a core proceeding for the purposes of federal bankruptcy jurisdiction; its factual and legal basis places it squarely under 28 U.S.C. § 157(b)(2)(H) ("proceedings to determine, avoid, or recover fraudulent conveyances"). This is so, despite the fact that, in suing it out, Plaintiffs are acting only for their own benefit, and not as trustee-fiduciaries for the benefit of the estate in Debtor's pending case; despite the fact that Plaintiffs seek an award of damages which is keyed in the alternative to the value of their actual loss, rather than solely to the value of the transferred assets; and despite the fact that the trustee has not joined this cause of action himself, and shows no intention to do so. The gravamen of this cause of action is a transfer of assets which, had Debtor retained them, could have been used to satisfy creditors' claims. Now that Debtor is in bankruptcy, that places the cause of action squarely

1452(b) were amended, to the end that they now contemplate entry of a final order on such motions by a bankruptcy judge, appealable of right once, to the district court. *See* Pub.L. No. 101–650, § 309, 104 Stat. 5089, 5113 (1990). Under amendments which became effective on August 1, 1991, the Federal Rules of Bankruptcy Procedure now embody the current statutory allocation of decision-making authority. *See* new FED. R.BANKR.P. 5011(b) (making motions for remand "contested matters" governed by FED.R.BANKR.P.

9014) and 9027(d) (ditto). As a result, the undersigned is entering the final order on Plaintiffs' motion.

6. In their complaint, Plaintiffs do not plead the basis for their personal, individual claims to the latter, "melded" measure of damages; presumably, were that measure to be awarded, Plaintiffs would share in the award on a pro rata basis.

within the ambit of core proceedings, as specifically enumerated in 28 U.S.C. § 157(b)(2); there is no qualifying language in that provision which would limit the covered proceedings to those commenced by a trustee or debtor-in-possession.[7]

■ On the other hand, Plaintiffs' first and third causes of action do not clearly fall within any of the specific sorts of proceedings described in 28 U.S.C. § 157(b)(2)(B)–(N). At base, both of them are claims for damages arising from incidents of wrongdoing allegedly perpetrated by Defendant, directly and intentionally, upon Plaintiffs. Entry of judgment in Plaintiffs' favor would only establish Defendant's liability to them; it would not result, in and of itself, in a claim against the bankruptcy estate, or add or remove assets from the estate.

This leaves the "catchall" provisions of 28 U.S.C. §§ 157(b)(2)(A) ("matters concerning the administration of the estate") and 157(b)(2)(O) ("other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor ... relationship ...") as the only possible bases for a classification as core proceedings. Predictably, Defendant cites the latter, pointing to "the potentially drastic impact on liquidation and distribution of estate assets" from a judgment in Plaintiffs' favor. The Bankruptcy Court, however, should avoid an expansive construction of the catch-all provisions of 28 U.S.C. §§ 157(b)(2)(A) and (O), to avoid circumventing the holding of the Supreme Court in *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), and Congress's response to it in the Bankruptcy Amendments and Federal Judgeship Act of 1984. *In re Cassidy Land and Cattle Co., Inc.*, 836 F.2d 1130, 1132 (8th Cir.1988). A grant of judgment in Plaintiffs' favor on their first and third causes of action would have no direct effect on the estate whatsoever; in the words of the formulation of a recent Eighth Circuit decision on 28 U.S.C.

§ 157(b)(2)(O), it would not "strike ... at the heart of the debtor-creditor relationship[s]" which are directly subject to adjustment as a result of Debtor's status in bankruptcy. *In re Tranel*, 940 F.2d 1168, 1174–1175 (8th Cir.1991). If one looks at core proceedings in the broadest possible sense, they are those in which a party seeks, or seeks to affect, the two basic categories of relief accorded under federal bankruptcy law: the Debtor's fundamental remedy of discharge; and those remedies which effectuate rights of the debtor's creditors in the bankruptcy context. The latter, of course, range from the collection and enhancement of the estate, through the estate's allocation of the estate; in a reorganization case, they have their ultimate counterpart in the plan confirmation process, the vehicle by which creditors are to be assured realization on their claims via a stream of payment rather than a distribution on liquidation. These two causes of action have nothing to do with either of these remedies, directly. There is no basis for classifying them as core proceedings under the catchall provisions.

They are, however, "related proceedings" which are within the District Court's jurisdiction. Under the rule in this Circuit, the status of a claim or cause of action as a "related proceeding" turns on

> whether the outcome of [the] proceeding could conceivably have any effect on the estate being administered in bankruptcy ...

*Nat'l City Bank v. Coopers and Lybrand*, 802 F.2d 990, 994 (8th Cir.1986) (quoting *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir.1984)); *In re NWFX, Inc.*, 881 F.2d 530, 533 (8th Cir.1989); *In re Titan Energy, Inc.*, 837 F.2d 325, 329–30 (8th Cir. 1988); *In re Dogpatch U.S.A.*, 810 F.2d 782, 786 (8th Cir.1987); *In re John Peterson Motors, Inc.*, 56 B.R. 588, 591 (Bankr. D.Minn.1986); *In re Dickenson Lines, Inc.*, 47 B.R. 653, 656 (Bankr.D.Minn.1985). The scope of related-proceeding jurisdiction is very broad. *In re NWFX, Inc.*, 881 F.2d

---

7. There is every good reason for the lack of qualifying language; it is just not necessary.

*See* discussion in Section IV of this Memorandum.

at 533.[8]

Under the authority of these cases, Plaintiffs' first and third causes of action are indeed related proceedings in Debtor's bankruptcy case. Most, if not all, of the named Plaintiffs have filed claims against the bankruptcy estate which are based on the same events and transactions which give rise to this lawsuit. In pursuing their separate avenues of recourse against the bankruptcy estate and against Defendant, Plaintiffs are barred from obtaining a double recovery. As Defendant's counsel points out, any recovery which Plaintiffs may obtain from Defendant may support a partial or total disallowance of their claims against the estate, or subordination of those claims pursuant to 11 U.S.C. §§ 508–510. Since Plaintiffs' causes of action against Defendant are in suit but not yet adjudicated, potential objections to their claims against the bankruptcy estate cannot even be joined until the third-party actions against Defendant are resolved. The bankruptcy estate cannot be fully administered until the trustee has had a reasonable opportunity to join and obtain rulings on objections to these claims. This lawsuit, then, carries the prospect of a material and fairly direct impact on the administration of the estate, one which is at least as direct as those involved in *Titan Energy, NWFX,* and *Dogpatch, U.S.A.*[9] The Eighth Circuit concluded that the actions in those three cases fell within the federal courts' very broad related-proceeding jurisdiction in bankruptcy. The two non-core proceedings in this lawsuit, then, do so as well.

III. Disposition of Plaintiffs' Motions.

A. *Motion for Remand on Alleged Procedural Defects in Removal.*

■ Plaintiffs argue that remand is appropriate because Defendant did not properly remove this lawsuit to the federal courts—specifically, because it filed its application for removal and a copy of the complaint with the Clerk of Bankruptcy Court, rather than with the Clerk of District Court. 28 U.S.C. § 1452(a) provides that removal is "to the *district* court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under [28 U.S.C. § ] 1334 ..." (Emphasis added). There is authority from this District for the proposition that a removal must be made first to the District Court, apparently by a physical filing with its Clerk, with the re-

---

8. As illustrative examples of the Eighth Circuit's conclusions about this breadth, *see In re Titan Energy, Inc.* (because action against non-creditor insurance company to obtain declaratory relief as to availability of insurance coverage for damage claims otherwise allowable against bankruptcy estate would affect the amount of assets available for distribution to other claimants against estate, it was related proceeding); *In re NWFX, Inc.* (claims and cross-claims in breach-of-contract action involving claimants against bankruptcy estate and third party were related proceedings, where outcome of cross-claims could affect amount and enforceability of claimants' direct claims against the bankruptcy estate); *In re Dogpatch U.S.A.* (action against guarantor of debt of debtor in bankruptcy was related proceeding, as it "would have a real and tangible effect on the estate," by affording alternate source of satisfaction to party which was asserting claim against the estate). *Cf. In re John Peterson Motors, Inc.* (third-party complaint by defendant in trustee's action to recover preferential transfers, asserting rights of rescission, contribution and indemnity against non-creditor third-party defendant, could not conceivably have any effect on bankruptcy estate, and was not related proceeding).

9. In support of its assertion of related-proceeding status, Defendant's counsel also argues that a judgment in Plaintiffs' favor would allow Defendant to assert a secured claim against other funds or assets currently in the estate, substantially affecting the sights of other claimants. At least on the record made for this motion, the underlying assertion is open to dispute; counsel cites no authority for the implied proposition that Defendant would have a right of indemnity against the estate, whether secured or unsecured, and the various pre-petition stipulations and agreements between Debtor and Defendant do not reserve such a right. Too, it would appear that the estate holds no further proceeds from collateral previously pledged to Defendant, all those proceeds having been paid as part of the consummation of the settlement. Thus, the assertion of a secured interest against remaining assets of the estate under the order approving the settlement seems to lack a financial foundation. The ultimate issues here, however, can be addressed and resolved after this lawsuit is laid to rest; for now, all that need be said is that the Court does not have to adopt Defendant's theory as a rationale for establishing federal jurisdiction, and declines to do so.

moved proceeding then apparently to be specially referred to a bankruptcy judge. *See In re Borchardt*, 56 B.R. 791, 792 (D.Minn.1986), *aff'd*, 803 F.2d 948 (8th Cir. 1986).

Even under *Borchardt*, however, an ensuing remand is only discretionary: "the Bankruptcy Court *may* decline jurisdiction ..." 56 B.R. at 792 (emphasis added). Too, *Borchardt* does not recognize the (admittedly involved) provisions of the Bankruptcy Code and Rules which, in conjunction, do empower the Bankruptcy Court and its clerk to receive a removed proceeding directly from its original forum. The reference of bankruptcy cases under 28 U.S.C. § 157(a), former LOC.R.BANKR.P. (D.MINN.) 103(b), and current LOC.R.BANKR.P. (D.MINN.) 201 encompasses both the underlying bankruptcy case and all of the "proceedings" it generates. As such, it clearly creates the framework of authority to permit and effectuate a direct removal, by the filing of an application in the bankruptcy court; in every bankruptcy case in this District, the District Court has already assigned its primary authority over such proceedings to its bankruptcy judges by the time of the removal of any proceeding from another forum. Too, as Defendant's counsel points out, the Federal Rules of Bankruptcy Procedure contemplate such direct filing and removal on their face: FED. R.BANKR.P. 9027(a) provides:

> A notice of removal shall be filed with the clerk for the district and division within which is located the state or federal court where the civil action is pending,

FED.R.BANKR.P. 5005(a) provides:

> The lists, schedules, statements, proofs of claim or interest, complaints, motions, applications, objections and other papers required to be filed by these rules ... shall be filed with the clerk in the district where the case under the [Bankruptcy] Code is pending,

and FED.R.BANKR.P. 9001(3) defines "clerk" as "bankruptcy clerk, if one has been appointed, otherwise clerk of the district court."

Plaintiffs' argument is clever, but overly technical; adopting it would honor form over substance, would upset the District Court's long-established reference of bankruptcy matters, and could cause substantial uncertainty in the procedures of the clerks of both bankruptcy and district courts. There is no ground for remand based on the means by which Plaintiff removed this lawsuit to this Court.

### B. Motion for Remand on Asserted Lack of Federal Jurisdiction.

As previously concluded, all of the counts of Plaintiffs' complaint fall within the federal courts' bankruptcy jurisdiction. As a result, Plaintiffs' first alternative theory has no basis; the federal courts do *not* lack jurisdiction over this lawsuit.

### C. Motions for Abstention, Remand, or Transfer as to Fraudulent–Transfer Cause of Action.

■ It is not appropriate to grant any of Plaintiffs' alternative motions as to the fraudulent-transfer cause of action in this lawsuit. That cause of action is a core proceeding; because mandatory abstention under 28 U.S.C. § 1334(c)(2) is limited to related proceedings, Plaintiffs are not entitled to relief under that provision. *Cf. In re Borchardt*, 56 B.R. at 793–4 (remanding related proceeding, where moving party met other requirements of mandatory abstention).

■ Further, an exercise of discretionary abstention under 28 U.S.C. § 1334(c)(1) is not appropriate. Even though Plaintiffs have pleaded this cause of action exclusively under state law, that circumstance does not deprive it of its status as a core proceeding. 28 U.S.C. § 157(b)(3). This Court frequently is called upon to apply the governing law, and necessarily has developed some expertise in it. The underlying pleaded facts do not suggest any novel issues of law, or seem to require a pioneering construction of the statute; thus, the situation does not call for deference to the state courts out of concerns for federalism. *Cf. In re Arctic Enterprises, Inc.*, 68 B.R. at 77–8 (abstention under 28 U.S.C. § 1334(c)(1) is appropriate in cases involving unsettled issues of state law, or ques-

tions of special concern to the state courts); *In re Drenckhahn,* 77 B.R. 697, 712 (Bankr.D.Minn.1987).

▮ Most importantly, only the trustee of Debtor's bankruptcy estate has standing to challenge pre-petition transfers of assets which otherwise would have passed into the bankruptcy estate; thus, this cause of action inures to the estate alone. *Saline State Bank v. Mahloch,* 834 F.2d 690, 694–5 (8th Cir.1987); *Nebraska State Bank v. Jones,* 846 F.2d 477, 478 (8th Cir.1988); *In re Strom,* 97 B.R. 532, 539 (Bankr.D.Minn. 1989), *aff'd,* 921 F.2d 836 (8th Cir.1991); *In re Grell,* 83 B.R. 652, 657 (Bankr.D.Minn. 1988). Abstention from and remand of this cause of action would put actual or potential parties in a procedural posture which would be irrational and indefensible. It is virtually certain that Plaintiffs would advance this cause of action as if they had the full, unfettered right to do so. However, the trustee would not be a named party to the litigation, even though the estate's actual or potential rights would be in jeopardy. Given Defendant's explicit joinder of the issue of standing in its answer and in the present motion, any final adjudication of these causes of action by the state district court could produce difficult *res judicata* or collateral estoppel problems, and the possibility of inconsistent results, were the trustee later to assert this cause of action in this Court. This outcome would be neither legally tenable nor equitable.

This leaves Plaintiffs' motion for transfer to the District Court, brought on the basis of their asserted right to a jury trial. In 1987, this Court concluded that parties to a fraudulent conveyance action under Minnesota state law, brought by a trustee in bankruptcy, had no right to a jury trial under state or federal law. *In re Wencl,* 71 B.R. 879, 884–85 (Bankr.D.Minn.1987),

and Minnesota cases cited therein.[10] Since then, the Supreme Court has conclusively ruled that defendants in a fraudulent-transfer action brought by a trustee in bankruptcy have a right under the Seventh Amendment to trial by jury, if those defendants have not filed proofs of claim in the underlying bankruptcy case. *Granfinanciera, S.A. v. Nordberg,* 492 U.S. 33, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989); *Langenkamp v. Culp,* —— U.S. ——, 111 S.Ct. 330, 112 L.Ed.2d 343 (1990). The situation at bar, however, is more complicated than the one in *Granfinanciera.* There, a non-creditor defendant demanded a jury trial in a fraudulent-transfer action commenced by a plaintiff-trustee. Here, the *plaintiffs,* most of whom are creditors of the debtor with proofs of claim on file with this Court, are deemed under the *Granfinanciera* rationale to have submitted to adjudication by the court on matters in the underlying case—but they are in the bankruptcy forum against their will, on *their own* fraudulent-conveyance action *against a third party.* Both sides make colorable arguments to support their respective positions on whether Plaintiffs have a right to jury trial on this cause of action. The outcome of this dispute is more elusive than in those under the simpler situations of *Granfinanciera* and *Langenkamp,* and the weighing of the arguments would require an analysis of considerable depth and complexity.

▮ In the last instance, however, this inquiry is unnecessary. Ultimately, the right to jury trial is only a right to the adjudication of disputed fact issues by a particular tribunal. Where the final disposition of a cause of action does not rest on the determination of disputed facts—that is, where it is amenable to summary adjudication under Rule 12(b)(6) or Rule 56—the Seventh Amendment right to jury trial does not even come into play. *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 336, 99

---

**10.** Of course, absent Debtor's bankruptcy filing, Plaintiffs would have had the right to a jury trial on their conversion and fraud causes of action. *Greenleaf v. Egan,* 30 Minn. 316, 15 N.W. 254 (1883) (conversion cause of action is action at law, properly triable by jury); *St. Paul and Sioux City R.R. Co. v. Gardner,* 19 Minn.

132 (Gil. 99) (1872) (ditto); *Williams v. Howes,* 137 Minn. 462, 162 N.W. 1049 (1917) (plaintiff in action for damages under fraud theory has right to trial by jury, regardless of defendant's interposition of equitable defense or counterclaim).

S.Ct. 645, 654, 58 L.Ed.2d 552 (1979), *aff'g* 565 F.2d 815, 819 (2d Cir.1977) (right to jury trial in action at law exists only when there is some genuine issue of material fact to be determined); *In re Peterson*, 253 U.S. 300, 310, 40 S.Ct. 543, 546, 64 L.Ed. 919 (1920); *Sullivan v. United States*, 788 F.2d 813, 816 (1st Cir.1986); *Allen v. Biggs*, 62 F.Supp. 229, 230 (E.D.Pa.1945) (where plaintiff's complaint is subject to dismissal or nonsuit, there is no right to jury trial). Acting *sua sponte* in the interests of conserving the resources of the parties and the judiciary, the Court has concluded that this cause of action is ripe for such a disposition. *See* Section IV of this Memorandum. As a result, Plaintiffs' motion for determination of their right to trial by jury and for transfer to the District Court is mooted, as to their fraudulent-transfer cause of action.

### D. Motion for Abstention and Remand, As to Two Remaining Causes of Action.

◼ The same conclusions do not follow for Plaintiffs' two other causes of action, which are premised on injuries which Plaintiffs allege that Defendant directly inflicted upon them and their property interests. They are based on state common law which is not often invoked in the debtor-creditor disputes which customarily come before this Court; discretionary abstention, then, would not be inappropriate.

More significantly, these causes of action were in suit in the state court when Defendant removed them here. As part of its ongoing monitoring of the administration of Debtor's estate, the U.S. Trustee recently filed the panel trustee's status report in the case. In that report, the trustee states that he believes that the case will have to remain open for at least two more years, to allow the estate to collect additional intangible assets. Defendant has made no showing that the Murray County District Court's docket is so overburdened that these counts could not come to trial within the next two years. Though it appears that some court will have to finally adjudi-

cate these counts before the trustee can make a final distribution, there is no evidence of record to challenge the conclusion that the Murray County District Court can do so in a timely fashion—i.e., so as to enter judgment at or before the time the trustee has finished collecting and liquidating assets. As a result of these conclusions, this Court is required under 28 U.S.C. § 1334(c)(2) to abstain from hearing and deciding these remaining counts. Since this Court is abstaining, the technical and ministerial act of a formal remand to the Murray County District Court is appropriate.[11]

### IV. Circumstances Favoring a *Sua Sponte*, Summary Disposition of Fraudulent–Transfer Cause of Action.

◼ As noted earlier, only a trustee has standing to prosecute an action for avoidance of the fraudulent conveyance of a debtor-transferor's property, if that transferor is in bankruptcy. *See* discussion and cases cited in Section III.C. of this Memorandum. The fraudulent-transfer counts of Plaintiffs' complaint are cleverly worded so as to make a claim only for money damages, rather than for a physical return of the property of whose transfer they complain; Plaintiffs also try to make it appear that they are seeking to recover damages in their own right, without an entry of judgment hinging on a finding that a fraudulent transfer took place. The substance behind the form is clear, however; Plaintiffs are attempting to invoke the status of creditors of Debtor, and to satisfy their direct claims against Debtor by recovering value which they allege Debtor lost in a fraudulent transfer. Plaintiffs sued out these counts nearly six months *after* Debtor's bankruptcy filing— long after the time when, as a matter of long-standing and controlling federal law, they lost their pre-petition standing to do so. These counts of their complaint, then, fail to state a claim upon which relief may be granted to the named complainants. As discussed in Section III.C. of this Memorandum, there are several reasons for retain-

11. This disposition, of course, moots Plaintiffs' motion for transfer to the District Court, as to

these two counts. Plaintiffs may exercise their right to trial by jury in the state court.

ing and disposing of this Count in this Court as quickly as possible—those being judicial economy, consistency and certainty of substantive result, and preservation of the federal courts' bankruptcy jurisdiction where the grant thereof is exclusive or primary.

██ Though Defendant has not yet made a formal motion for dismissal of these counts, it joined the issue of standing, clearly and unequivocally, in its answer and in its responsive brief for this motion. Both counsel addressed the issue in argument, when Defendant's counsel noted that these counts might be subject to summary adjudication on the standing issue; Plaintiffs cannot now claim to have been blind-sided. Under these circumstances, the Court is well within its power in addressing the tenability of these counts *sua sponte*, and in dismissing them. *Omar v. Sea–Land Service, Inc.*, 813 F.2d 986, 991 (9th Cir.1987) (federal trial court may act *sua sponte* to dismiss claim under Rule 12(b)(6), even without notice to claimant, where claimant cannot possibly win relief on claim). *Cf. Celotex Corp. v. Catrett*, 477 U.S. 317, 326, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986) (where affected party has had sufficient notice of prospect of summary adjudication against it, and full opportunity to make arguments against it, where record demonstrates that such disposition is appropriate, and where no purpose would be served by further delaying proceedings, federal trial court may grant summary judgment *sua sponte*); *Interco Inc. v. Nat'l Surety Corp.*, 900 F.2d 1264, 1268 (8th Cir.1990); *In re Mid–City Hotel Assoc.*, 114 B.R. 634, 646 (Bankr.D.Minn.1990); *In re O'Malley*, 90 B.R. 417, 422 (Bankr.D.Minn.1988). To preserve this Court's core-proceeding jurisdiction and authority over these counts, then, and to see that the estate's options as to this cause of action are preserved, the Court has dismissed these counts with prejudice as to Plaintiffs' reassertion of them, but without prejudice to the Trustee's assertion of them.