**In re Michael B. MICHENER, Debtor.**

**James L. GIRARD, Commissioner of Revenue, Plaintiff,**

v.

**Michael B. MICHENER and June J. Michener, Defendants.**

**Bankruptcy No. 95–33473.
Adversary No. 97–3271.**

United States Bankruptcy Court,
D. Minnesota,
Third Division.

Feb. 13, 1998.

---

**17.** A review of the files indicates that the parties have been back to state family court at least five

times.

Stephen F. Simon, Tax Litigation Div./MN Dept. of Revenue, St. Paul, MN, for Plaintiff.

Dennis J. Felix, Burnsville, MN, for Defendant.

## ORDER

DENNIS D. O'BRIEN, Chief Judge.

This matter was heard on December 4, 1997, on motion of Plaintiff for remand of this removed state court proceeding. Appearances are noted in the record. The Court, having heard arguments of counsel, reviewed the pleadings and memoranda, and, being fully advised in the matter, now makes this ORDER pursuant to the Federal and Local Rules of Bankruptcy Procedure.

## I

## FACTS

This action was originally brought by Plaintiff Minnesota Commissioner of Revenue in state district court against Defendants Micheners, pursuant to Minn.Stat. § 513.44, seeking declaratory judgment setting aside a prepetition transfer of real property by the Defendant Debtor Michael to June as fraudulent. Defendants removed the action here pursuant to 28 U.S.C. § 1452(a). Plaintiff now seeks an order of abstention and remand under 28 U.S.C. § 1334 and 28 U.S.C. § 1452.

On September 11, 1991, Defendants transferred Michael B. Michener's joint tenancy interest in the homestead of the parties to Defendant June J. Michener, who thereafter has continuously held sole title to the entire property. Plaintiff alleges that the transfer was without consideration. Five days later, on September 16, Defendant Michael B. Michener filed his delinquent state tax returns for the years 1982 through 1990. On March 5, 1992, the Commissioner of Revenue filed "Notice of State Tax Lien" in the county where the property is located, attaching the real estate with specificity. On July 20, 1995, Mr. Michener filed for relief under 11 U.S.C. Chapter 7. The Commissioner had made no attempt to enforce the alleged lien between filings of the lien and the bankruptcy.

The Chapter 7 trustee became aware of the transfer at the first meeting of creditors, but made no attempt to avoid it under 11 U.S.C. § 544(b) and Minn.Stat. § 513.44. The bankruptcy case was administered as a "no asset" case and was closed on November 28, 1995. The Commissioner was aware of the transfer at bankruptcy filing and had timely notice of the bankruptcy. He made no request that the trustee seek avoidance; nor did the Commissioner seek avoidance in any other manner during pendency of the bankruptcy.

On December 9, 1997, Plaintiff brought this action in state district court, pursuant to Minn.Stat. §§ 513.44 and 513.47, to enforce the claimed lien in the amount of $61,943.29.

The complaint alleges that the transfer was "made with actual intent to hinder, delay, or defraud the [Plaintiff]." *Complaint*, at 3. The complaint also alleges that the bankruptcy discharge, entered on October 24, 1995, did not discharge Michael Michener from his tax debt to the Plaintiff. The relief requested is limited, however, to a prayer that: the transfer be voided; the title be restored to the Defendants as joint tenants; and, that the Plaintiff be allowed his costs.

The Defendants claim in removal that: the fraudulent transfer action is a "core" bankruptcy proceeding; the Plaintiff has no standing to bring such an action, as the right vested exclusively in the trustee at bankruptcy filing; and, the right of action was extinguished with the lapse of the trustee's statute of limitations, pursuant to 11 U.S.C. § 546(a), upon the closing of the bankruptcy case. Additionally, they affirmatively plead discharge of the tax liability, and claim that, too, is a "core" bankruptcy proceeding justifying removal.

In seeking remand, the Plaintiff claims that his post-bankruptcy fraudulent transfer action is an integral part of his lien enforcement rights not subsumed by the trustee in the bankruptcy case; and, that determination of discharge of Mr. Michener's tax liability is not directly implicated in the action. Plaintiff argues that no part of the action is "core" or even "related" to the bankruptcy case; and, that no federal jurisdiction lies in connection with the proceeding.

## II

## DISCUSSION

### A. Jurisdiction, Removal And Remand In General.[1]

#### 1. *Jurisdiction.*

 Federal district courts have exclusive jurisdiction over bankruptcy cases and nonexclusive jurisdiction over all proceedings that arise under, or relate to, them. 28 U.S.C. §§ 1334(a) and (b). Bankruptcy cases and proceedings can be referred by the dis-

---

1. For an excellent in-depth discussion of this area, *see In re Fulda v. St. Paul Bank For Cooper-* *atives*, 130 B.R. 967, 972 (Kishel, J.) (Bankr. D.Minn.1991).

trict courts to bankruptcy judges, for hearing and determination or recommendation. Bankruptcy judges collectively are units of the district courts. 28 U.S.C. §§ 151 and 157(a). Bankruptcy judges, who have been referred bankruptcy cases, are empowered to hear and finally determine, subject to appeal, the referred bankruptcy cases and the bankruptcy proceedings arising out of them or in them. Such proceedings are described as "core." 28 U.S.C. § 157(b)(1) and (2). Bankruptcy judges are empowered to hear and recommend disposition of proceedings which are "related" but not "core" proceedings to a bankruptcy case. 28 U.S.C. § 157(c)(1).[2]

■ The Bankruptcy Code does not define "core" and "related" proceedings. A non-exclusive list of "core" proceedings is found in 28 U.S.C. § 157(b)(2). "Related" proceedings, under the rule in this Circuit, are those where the determination of the proceedings "could conceivably have any effect on the estate being administered in bankruptcy." *In re Fulda v. St. Paul Bank For Cooperatives,* 130 B.R. 967, 974 (Bankr.D.Minn.1991), *citing Nat'l City Bank v. Coopers and Lybrand,* 802 F.2d 990, 994 (8th Cir.1986) (quoting *Pacor, Inc. v. Higgins,* 743 F.2d 984, 994 (3d Cir.1984)); *In re NWFX, Inc.,* 881 F.2d 530, 533 (8th Cir.1989); *In re Titan Energy, Inc.,* 837 F.2d 325, 329–30 (8th Cir.1988); *In re Dogpatch U.S.A.,* 810 F.2d 782, 786 (8th Cir.1987); *In re John Peterson Motors, Inc.,* 56 B.R. 588, 591 (Bankr.D.Minn.1986); *In re Dickenson Lines, Inc.,* 47 B.R. 653, 656 (Bankr.D.Minn.1985).

## 2. *Removal and Remand.*

■ Proceedings involving federal bankruptcy jurisdiction, whether "core" or "related," that are commenced in a court having jurisdiction which is concurrent with the jurisdiction of the federal district courts, can be removed to the appropriate federal district court and passed through to a bankruptcy judge and the bankruptcy court. 28 U.S.C. § 1452(a); Fed.R.Bankr.P. 9027. When passed through to a bankruptcy judge, all proceeding matters, including motions for re-

mand, are addressed by the bankruptcy court. Fed.R.Bankr.P. 9027(d) and (e).

■ The bankruptcy court must remand proceedings where no federal jurisdiction exists under 28 U.S.C. § 1334, since removal of such proceedings is not permitted by 28 U.S.C. § 1452(a).

§ 1452. Removal of claims related to bankruptcy cases

(a) *A party may remove any claim or cause of action* in a civil action other than a proceeding before the United States Tax Court or a civil action by a governmental unit to enforce such governmental unit's police or regulatory power, *to the district court* for the district where such civil action is pending, *if such district court has jurisdiction of such claim or cause of action under section 1334 of this title. (emphasis added)*

Additionally, the bankruptcy court must remand removed proceedings if they are of the type described in 28 U.S.C. § 1334(c)(2). That section requires abstention of federal court jurisdiction under certain circumstances pertaining to "related" proceedings. The statute provides:

§ 1334. Bankruptcy cases and proceedings

(C)(2) Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

■ Finally, the bankruptcy court has discretion to remand proceedings, "core" or "related," on any equitable ground. 28 U.S.C. § 1452(b). The source of federal court jurisdiction in bankruptcy, 28 U.S.C. § 1334, specifically allows for discretionary

---

**2.** However, if the parties agree, and the district court refers, the bankruptcy judge may hear and

finally determine a "related" proceeding, subject to appeal as well. 28 U.S.C. § 157(c)(2).

abstention of federal jurisdiction in certain circumstances, which can result in discretionary remand of removed proceedings. 28 U.S.C. § 1334(c)(1) provides that:

> (c)(1) Nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

## B. Plaintiff's Fraudulent Transfer Action Does Not Invoke Federal Jurisdiction.

### 1. Remedies Under Minn.Stat. §§ 513.41–513.51.

The remedies under Minn.Stat. §§ 513.41–513.51, Uniform Fraudulent Transfer Act, are traceable through the legislation's predecessor, Minn.Stat. §§ 513.20–513.32, and prior common law. Before the enactment in 1921 of the Uniform Fraudulent Conveyance Act, Minn.Stat. §§ 513.20–513.32, it was well established law in Minnesota that a general judgment lien attached to fraudulently conveyed real property upon the docketing of a general money judgment against the transferor in the county where the property is located; even though title and possession of the property both resided in the fraudulent grantee. *Wadsworth v. Schisselbaur*, 32 Minn. 84, 19 N.W. 390, 391 (Minn.1884). An action to set aside the fraudulent conveyance could be brought by the judgment lien holder as part of enforcing the lien. *Id.* 19 N.W. at 390. Only creditors having general judgments against fraudulent grantors could maintain fraudulent conveyance actions.

The Uniform Fraudulent Conveyance Act expanded creditors' remedies by allowing creditors without judgments to bring fraudulent conveyance actions; but, the Act did not abrogate the prior law. The Act was held to be a codification of prior law, preserving the fraudulent conveyance action, now under the statute, for judicial lien enforcement litigation. In *Lind v. Johnson*, 204 Minn. 30, 282 N.W. 661 (Minn.1938), the Minnesota Supreme Court ruled:

> While the fraudulent conveyance act is remedial and as such should be liberally construed, there is nothing in its language or stated purpose leading to the belief that it was intended to impair or limit the old practice under our long established legal system. As a matter of fact it seems arguable that § 8483(1)(a) is broad enough to include the old procedure of entry of judgment and return of execution unsatisfied as well as the more modern relief given a simple creditor. Section 8483(1)(b) recognizes the old legal remedy of a judgment creditor and extends this to a simple creditor. Consequently we can see no reason for believing the method resorted to and relied upon by plaintiff is prohibited or limited by the new act. Actually the act is a codification and an extension of our former law. The new act simply adds an efficient, optional, and additional remedy to a creditor who has not reduced his claim to judgment. If he has not reduced his claim to judgment he may now, by virtue of the act, protect his right by promptly instituting proceedings although he is only a simple creditor. But if he has a judgment against the grantor, he may still proceed as before. Such construction does not vest in the judgment creditor any new rights or remedies not theretofore his.

*Lind*, 282 N.W. at 667.[3]

---

**3.** Reference is made by the *Lind* court to the "return of execution unsatisfied" as part of the enforcement procedure because the action in that case was to attach personal property of the defendant. There were two types of creditors' bills available to creditors prior to the Uniform Fraudulent Conveyance Act, one for attachment of personal property and the other for attachment of real property. The first (personal property) required a judgment and return of execution *unsatisfied prior to the action*, the second (real property) required judgment and docketing in the county where the real property was locat-

ed. The court explained the remedies in this passage:

> The suit is obviously what was a creditor's bill prior to the adoption of the code. Creditor's bills in equity, and today under the code, unless the law was changed by the uniform fraudulent conveyance act, were of two types. The first was where the judgment creditor sought to satisfy his judgment out of the equitable assets of the debtor which could not be reached by execution. The second was where property legally liable to execution had been fraudulently conveyed and the creditor at-

Accordingly, under Minnesota law, the Uniform Fraudulent Conveyance Act provided remedies for both judgment lien holders and general unsecured creditors.[4] The relevant statute read:

(1) Where a conveyance or obligation is fraudulent as to a creditor, such creditor, when his claim has matured, may, as against any person except a purchaser for fair consideration without knowledge of the fraud at the time of the purchase, or one who has derived title immediately or mediately from such purchaser:

(a) Have the conveyance set aside or the obligation annulled to the extent necessary to satisfy his claim, or

(b) Disregard the conveyance and attach or levy execution upon the property conveyed.

Minn.Stat. § 513.28 (1921).

In 1987, Minnesota enacted the Uniform Fraudulent Transfer Act, Minn. Laws ch. 19, § 12, which replaced the Uniform Fraudulent Conveyance Act, including Minn.Stat. § 513.28. The replacement provision in the Fraudulent Transfer Act, for § 513.28 of the Fraudulent Conveyance Act, is found in Minn.Stat. § 513.47, which reads:

513.47. Remedies of creditors

(a) In an action for relief against a transfer or obligation under sections 513.41 to 513.51, a creditor, subject to the limitations in section 513.48, may obtain:

(1) avoidance of the. transfer or obligation to the extent necessary to satisfy the creditor's claim;

(2) an attachment or other provisional remedy against the asset transferred or other property of the transferee in accordance with the procedure prescribed by chapter 570;

(3) subject to applicable principles of equity and in accordance with applicable rules of civil procedure:

---

tempted to have the conveyance set aside. *Wadsworth v. Schisselbaur*, 32 Minn. 84, 86, 19 N.W. 390. Furthermore, since that conveyance in fraud of creditors was not valid at law, the legal remedy available was to levy and sell the interest of the debtor in the property and bring ejectment against the fraudulent grantee. *Doland v. Burns Lumber Company*, 156 Minn. 238, 194 N.W. 636; 2 Mason Minn.St.1927, § 8483(1)(b); McClintock, Equity, p. 359, § 203. If the creditor sought to maintain a suit of the first type, although there was much variation among the states, in Minnesota he was required first to exhaust his remedy at law by the issuance of an execution and its return unsatisfied, for until then the remedy at law had not been shown to be inadequate. *Moffatt v. Tuttle*, 35 Minn. 301, 28 N.W. 509; see McClintock, Equity, p. 360, § 203. In the second type of suit, it was the settled rule in this state that it was not necessary to issue an execution before assailing the conveyance. *Wadsworth v. Schisselbauer, supra.* As to the creditor the conveyance was voidable, and he was entitled to be placed in the same position as if it had never been made.
*Lind v. Johnson*, 282 N.W. at 665–666.

4. See also, *Healy–Owen–Hartzell Co. v. Montevideo Farmers' & Merchants' Elevator Co. et al.*, 170 Minn. 290, 212 N.W. 455 (Minn.1927), ("When a debtor conveys land, and his judgment creditor claims it was in fraud of creditors, he may disregard the conveyance and sell the real estate upon execution and afterwards litigate the question of fraud, or he may bring an action to set aside the conveyance as fraudulent. Uniform Fraud.

Conv. Act, § 9, G.S.1923, § 8483..."); and, *Doland v. Burns Lumber Co.*, 156 Minn. 238, 194 N.W. 636, 637 (Minn.1923), ("It is well settled that a judgment creditor, who claims that his judgment debtor has conveyed real estate for the purpose of defrauding creditors, may disregard such conveyance and levy upon and sell the real estate under an execution issued on his judgment, and leave the question of title to be litigated thereafter between the purchaser at the sale and the claimant under the conveyance; or he may bring an action to determine the fraudulent character of the conveyance before proceeding under the execution. . . . [citations omitted] Chapter 415, Laws of 1921, gives legislative sanction to this rule..."). Cf. *Palatine National Bank v. Strom*, 97 B.R. 532 (Bankr.D.Minn.1989) (Kressel, J.), wherein the court apparently ruled that Palatine, a judgment creditor, could not enforce its judgment lien by use of Minn.Stat. § 513.28, stating that: "This section makes the imposition of a lien on fraudulently conveyed property a potential remedy for a prevailing creditor in a fraudulent conveyance action. Contrary to Palatine's position, the lien does not arise automatically or immediately as a result of the allegedly fraudulent conveyance. Instead, once a creditor establishes that a fraudulent conveyance occurred, the court may impose a lien on the fraudulently conveyed property in favor of that creditor". *Palatine*, 538, aff'd. and reversed in part on other grounds, *Palatine v. Strom*, 921 F.2d 836 (8th Cir.1991). However, from the quoted language, it is not clear that Palatine had asserted that its judicial lien had attached at docketing of its four general judgments prior to commencement of the action under the statute.

(i) an injunction against further disposition by the debtor or a transferee, or both, of the asset transferred or of other property;

(ii) appointment of a receiver to take charge of the asset transferred or of other property of the transferee; or

(iii) any other relief the circumstances may require.

(b) If a creditor has obtained a judgment on a claim against the debtor, the creditor, if the court so orders, may levy execution on the asset transferred or its proceeds. 1987 Minn. Laws ch. 19, sec. 7.

Nothing in the statute, or its history, indicates that the legislature intended to abrogate the prior law that recognized the validity of docketed judgment liens on fraudulently conveyed real property, or use of the fraudulent transfer statute in aid of judicial lien enforcement. In fact, Minn.Stat. § 513.47(b) appears to specifically provide for the remedy of enforcement of judgment liens obtained prior to fraudulent transfer litigation.

■ Accordingly, present remedies under Minnesota's Fraudulent Transfer Act, Minn. Stat. §§ 513.41–513.51, extend to both simple unsecured creditors and attached judgment lien creditors.

## 2. *Scope Of The Bankruptcy Trustee's Remedy Under Minn.Stat. §§ 513.41–513.51 Through 11 U.S.C. § 544(b).*

■ When a debtor files bankruptcy, the resulting trustee is vested with certain avoidance powers, including the power granted in 11 U.S.C. § 544(b), which provides:

§ 544. Trustee as lien creditor and as successor to certain creditors and purchasers

(b) The *trustee may avoid any transfer of an interest* of the debtor *in property* or any obligation incurred by the debtor that is *voidable under applicable law by a creditor holding an unsecured claim* that is allowable under section 502 of this title or

that is not allowable only under section 502(e) of this title. *(emphasis added).*

The power granted the trustee under this section permits the trustee to avoid certain prepetition transfers under Minn.Stat. § 513.44 [5]. Furthermore, to the extent that the power is vested in the trustee, it is exclusive. After bankruptcy filing, only the trustee has standing to exercise the avoidance power granted. *See: Nebraska State Bank v. Jones,* 846 F.2d 477 (8th Cir.1988); *Saline State Bank v. Mahloch,* 834 F.2d 690 (8th Cir.1987); *DLH, Inc. v. Russ,* 544 N.W.2d 326 (Minn.App.1996), *aff'd* 566 N.W.2d 60 (Minn.1997).

However, the § 544(b) power is limited to avoidance of the transfer of interests voidable by creditors holding unsecured claims. The power granted the trustee under 11 U.S.C. § 544(b) does not include the power to avoid the transfers of liened interests in property that are voidable by lien creditors in the enforcement of their liens. Trustees have neither the authority, nor the responsibility, to enforce creditors' liens in bankruptcy. Lien creditors need not, and cannot, depend upon trustees to enforce their lien rights.

■ Accordingly, the right of action under Minn.Stat. § 513.44 in favor of lien creditors as part of enforcement of their liens is not subsumed in the powers of a bankruptcy trustee under 11 U.S.C. § 544(b). *See, In re Mathiason,* 129 B.R. 173, 178, n. 6 (Bankr. D.Minn.1991) (O'Brien, J.) Notwithstanding a bankruptcy filing, lien creditors have standing to bring actions under Minn.Stat. § 513.44 as part of the enforcement of their liens. The lien creditor's lien interest in such an action is separate and distinct from the trustee's interest as representative of the interests of creditors having general unsecured claims.

## 3. *Plaintiff's Fraudulent Transfer Action Is Neither "Core" Nor "Related."*

■ Plaintiff's fraudulent transfer action is not a "core" proceeding. The action does

5. Minn.Stat. § 513.44 provides, in part:
513.44. Transfers fraudulent as to present and future creditors
(a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the

transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
(1) with actual intent to hinder, delay, or defraud any creditor of the debtor ...

not arise in or out of a bankruptcy case. The action is a lien enforcement proceeding[6] in which the bankruptcy estate has no interest. While the estate may once have had an interest in the subject matter of the litigation in connection with the trustee's own avoidance power under § 544(b) on behalf of unsecured creditors, that interest lapsed when the bankruptcy case was closed. 11 U.S.C. § 546(a) provides:

§ 546. Limitations on avoiding powers

(a) An action or proceeding under section 544, 545, 547, 548, or 553 of this title may not be commenced after the earlier of—

(1) the later of—

(A) 2 years after the entry of the order for relief; or

(B) 1 year after the appointment or election of the first trustee under section 702, 1104, 1163, 1202, or 1302 of this title if such appointment or such election occurs before the expiration of the period specified in subparagraph (A); or

(2) the time the case is closed or dismissed.

Accordingly, the statute of limitations on the trustee's cause of action has run, and the trustee has no viable interest in the litigation.[7]

Furthermore, because the trustee's own right of action on behalf of unsecured creditors has lapsed, the proceeding cannot be "related" either. No determination of the proceeding "could conceivably have an effect on the estate being administered in bankruptcy." *In re Fulda Independent Co-op.*, at 974.

No federal jurisdiction lies concerning the fraudulent transfer action, since it is neither "core" nor "related" to a bankruptcy case. Therefore, the cause of action cannot be the basis for removal from state court.

## C. Dischargeability Issue Invokes Federal Jurisdiction From Which Abstention is Appropriate.

██ Personal liability of Mr. Michener for the tax is not a necessary element of the Plaintiff's lien enforcement action. Liens generally survive bankruptcy and can be enforced notwithstanding discharge of personal

---

6. Minnesota law accords tax liens the status of judgment liens.

270.69. Lien for taxes

**Subdivision 1. Creation of lien.** The tax imposed by any chapter administered by the commissioner of revenue, and interest and penalties imposed with respect thereto, including any recording fees, sheriff fees, or court costs that may accrue, shall become a lien upon all the property within this state, both real and personal, of the person liable for the payment or collection of the tax, except property exempt under subdivision 3, from and after the date of assessment of the tax.

**Subd. 6. Enforceability of lien.** The lien imposed by this section shall be enforceable by levy as authorized in section 270.70, or by judgment lien foreclosure as authorized in chapter 550.

270.70. Levy and distraint

**Subd. 3. Manner of execution and sale.** In making the execution of the levy and in collecting the taxes due, the commissioner shall have all of the powers provided in chapter 550 and in any other law for purposes of effecting an execution against property in this state. The sale of property levied upon, and the time and manner of redemption therefrom, shall, to the extent not provided in sections 270.701 to 270.709, be governed by chapter 550. The seal of the court, subscribed by the court administrator, as provided in section 550.04,

shall not be required. The levy for collection of taxes may be made whether or not the commissioner has commenced a legal action for collection of such taxes.

7. This Court inferred in *In re Mathiason*, 129 B.R. 173, 178 n. 6 (Bankr.D.Minn.1991) that such a proceeding might be "core" as long as the trustee had a viable action under § 544(b).

[I]ndividual unsecured creditors have no standing to prosecute fraudulent conveyance actions once a bankruptcy case has been filed. The interests of such creditors are subsumed in the interest of the trustee. But the scope of the cases does not appear to be so broad as to preclude standing of a creditor to sue, where the creditor claims an interest in the subject property superior to the transferred interest sought to be avoided. Thus, where a lien claimant, such as Cameron, seeks to avoid a conveyance as an obstruction to the recognition or enforcement of its lien on the subject property, it would seem that the lien claimant clearly has standing to sue. In fact, it would seem entirely appropriate for such a creditor to join both the trustee and grantees of the property in a declaratory action, based directly on the state statute, to have the lien claimant's [*sic*] rights and priorities in the property judicially recognized, determined, and enforced. *id.*

liability of a debtor on the debts underlying the liens. Nonetheless, the Plaintiff alleges in the complaint that the tax debt was not discharged in Mr. Michener's bankruptcy case.[8]

Mr. Michener alleges in his answer to the complaint that the tax debt was discharged in his bankruptcy, and that the Plaintiff's action is in violation of the 11 U.S.C. § 524(a)(2) injunction.[9] Although not specifically identified as such, the allegation seems to be intended both as an affirmative defense to the fraudulent transfer action, and as a counterclaim. The answer does not properly plead discharge as an affirmative defense, because Plaintiff's cause of action for lien enforcement is not dependent upon status of the discharge. Therefore, as an affirmative defense, the allegation does not invoke federal jurisdiction.

 The pleading does properly assert a dischargeability action as a counterclaim.[10] Dischargeability of particular debts is a matter of federal bankruptcy law; and, dischargeability proceedings arise out of bankruptcy cases. Dischargeability proceedings are "core." *See*, 28 U.S.C. § 157(b)(2)(*l* ). But, as noted earlier, the federal district courts do not have exclusive jurisdiction over "core" bankruptcy proceedings. The mere pleading of a "core" bankruptcy proceeding in a state court action by a defendant, does not necessarily sustain removal of the action to the federal courts.

 The exception to dischargeability provision involved here is found in 11 U.S.C. § 523(a)(1)(C), which reads:

§ 523. Exceptions to discharge

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

(1) for a tax or a customs duty—

(C) with respect to which the debtor made a fraudulent return or *willfully attempted in any manner to evade or defeat such tax; (emphasis added)*

Plaintiff's fraudulent transfer action is premised on the allegation that Mr. Michener transferred his interest in his homestead with the actual intent to hinder, delay, or defraud the Department of Revenue in the collection of the delinquent taxes. Determination of the issue in the fraudulent transfer action will necessarily determine the dischargeability counterclaim. There exists no other issue to litigate in the dischargeability proceeding.

Despite the dischargeability implications, the entire litigation will be determined in the lien enforcement action, which involves only state law. In the interests of comity and respect for state law, the federal court should abstain from jurisdiction, pursuant to 28 U.S.C. § 1334(c)(1), and allow the entire matter to be determined in the state district court where the lien enforcement litigation was commenced.

## III

## DISPOSITION

Based on the foregoing, it is hereby **ORDERED**, pursuant to 28 U.S.C. § 1452, that this proceeding be, and is hereby, remanded to the state district court from which it was removed for final determination of all issues

---

**8.** It is not clear why Plaintiff pleaded non-discharge of the debt. Plaintiff did not seek judgment declaring the debt excepted from the Debtor's discharge in his bankruptcy.

**9.** The statute provides:
§ 524. Effect of discharge
(a) A discharge in a case under this title—
(2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived;

**10.** Plaintiff argued at the hearing that Mr. Michener could not seek declaratory judgment concerning the discharge by counterclaim, but cited no authority for the assertion. Under the Minnesota Rules of Civil Procedure, the dischargeability action is assertable as a permissive counterclaim. Minn. R.C.P. 13.02 provides:

Rule 13.02. Permissive Counterclaims
A pleading may state as a counterclaim any claim against an opposing party not arising out of the transaction that is the subject matter of the opposing party's claim.

and causes of action presently pleaded therein.