AUGUST LIND v. O. N. JOHNSON COMPANY AND OTHERS.[1]

December 2, 1938.

No. 31,735.

[1]Reported in 282 N. W. 661.

*Erland Lind,* for appellant.

*Philip L. Scherer* and *Flor & Reim,* for respondents.

JULIUS J. OLSON, JUSTICE.

Plaintiff appeals from an order sustaining defendants' demurrer to his complaint. This suit was brought October 25, 1937, by Mr. Lind as receiver of the Oriente Sugar Company, a foreign corpora-

tion, and as trustee for Lind-Larson Company, a domestic corporation. The facts alleged may be thus summarized: The Lind-Larson Company held certain shares of stock in the sugar company. The latter company's corporate existence had been terminated by virtue of the law of its domicile; but at the time of its dissolution there were certain of its assets within this state, and these had not been distributed to its stockholders. To recover these assets for the stockholders of the sugar company, Lind, as trustee for the Lind-Larson Company, in November, 1928, instituted a representative action for the benefit of himself and the other stockholders of the dissolved sugar company against O. N. Johnson and others. That suit went to judgment on August 31, 1932, and plaintiff as receiver of the sugar company was awarded $26,733.37, said Lind having been appointed such receiver before that judgment was entered. The costs in that suit were entered in his favor as trustee for the Lind-Larson Company, the amount of that judgment being $38.11. The liabilities created by virtue of these judgments were based upon obligations which accrued between October 21, 1920, and March 15, 1922. An execution was promptly issued upon the larger judgment, and was returned wholly unsatisfied October 22, 1932.

The judgment debtor, O. N. Johnson, died in 1935. His estate was insolvent. Nevertheless claims representing these judgments were filed and duly allowed as claims against his estate; but nothing has been collected upon them for the reason that there were and are no assets belonging to the estate wherewith to meet them.

In January, 1923, and over a period of many years prior thereto Johnson was the owner of large property interests in the village of Gibbon, this state. In February of that year he organized a corporation known as O. N. Johnson Company. That corporation is a party defendant here. He transferred to it large property interests, taking in exchange therefor 778 shares of stock in the corporation so formed, the par value of which was $100 per share. Additional shares were later issued in exchange for property owned by him individually. For the purpose and with the intent of hindering, delaying, and defrauding his creditors, Johnson caused such stock to be issued to his wife (now widow), Johanna, and to his

daughters, defendants Frances, Victoria, and Elizabeth. In 1932 Johnson and the other defendants entered into a conspiracy amongst themselves to hinder, delay, and defraud Johnson's creditors, and in carrying out their wrongful purposes certain other shares of such stock were issued to the other defendants, all without consideration and in furtherance of the fraudulent schemes of defendants.

The relief sought in the present suit is to subject all of the stock so transferred to the claims of plaintiff as judgment creditor. In event the stock is no longer available thereto, plaintiff seeks a money judgment against the several defendants for the value of the shares of stock so transferred to each of them and as of the time so wrongfully transferred and acquired. There are other charges of fraud and wrongdoing, but we refrain from further comment respecting such, as what has been related sufficiently outlines the general plan and purpose of the suit. One defendant, Mr. Otting, has not been served with process.

The defendants demurred to the complaint on the following grounds: (1) Misjoinder of parties plaintiff; (2) misjoinder of parties defendant; (3) misjoinder of causes of action; and (4) that as to several of the pretended causes of action the facts stated in the complaint are not sufficient to constitute a cause of action against any of the demurring defendants.

The court sustained this demurrer in all respects. Nothing is said by the court as to its reasons for reaching this conclusion except "that the inconsistencies and perplexities of this complaint are such that it should not be dignified by a memorandum pointing out its defects." Nor was any provision made for leave to plead over. Thus we are left to our own research (with counsels' help) to find solution to the problems presented. In considering these we think the first three grounds upon which demurrants rely may be considered together. The legal principles involved in their solution are virtually identical.

■ The questions of misjoinder of parties, both as to plaintiff and defendants, and of causes of action are, in substance and effect, interrelated and interdependent. What plaintiff seeks to accomplish in his two capacities of receiver and trustee for two different cor-

porate enterprises is the enforcement of judgment claims by means of what was during the pre-code system known as a creditor's bill. While law and equity are under our code wholly within the jurisdiction of and administered by the same court, yet we have substantial remnants of the old systems. In this case, if we assume the old system still applicable to the present situation, we must look to the old equity practice in order to determine whether there is a misjoinder of parties or causes. Could the present suit have been maintained against the objections here raised under the pre-code practice without rendering the bill multifarious?

In North v. Bradway, 9 Minn. 169 (183), these identical questions were thoroughly and adequately considered and determined. In that case two separate and distinct judgment creditors brought a joint suit against the judgment debtor and numerous grantees who had rendered aid and assistance to the debtor in attempting to place his property beyond the reach of plaintiffs. The complaint was sustained against the same objections as are raised here. That case became and still remains the leading case on this subject in this state and has been followed in numerous decisions since. From these many cases Mr. Dunnell (5 Dunnell, Minn. Dig. [2 ed. and Supps.] § 7505) succinctly states the rule:

"In equity causes of action may be joined if they might have been included in a bill in equity under the old practice without making it multifarious. A bill in equity is not multifarious, where one general right only is claimed by it, though the defendants have only separate interests in distinct questions which arise out of or are connected with such right. All of the defendants, however, must be affected in some respect by the action, or by some part thereof, but they need not be equally affected."

Especially helpful to solution here are State ex rel. Brooks-Scanlon Lbr. Co. v. Knife Falls Boom Corp. 96 Minn. 194, 199, 102 N. W. 817, and Bacich v. Northland Transp. Co. 173 Minn. 538, 217 N. W. 930. The underlying thought, the basis for decision in all these cases, is that only one general right is asserted in the complaint, i. e., the right to reach and to subject fraudulently transferred prop-

erty to the payment of just claims of complaining judgment creditors. While Johnson made these several transfers, or caused them to be made, independently and in separate and distinct transactions, yet each such transfer and each such transferee is affected by the fraud involved to the extent of the property thus received by him. Every defendant who rendered aid or assistance to Johnson in the accomplishment of this purpose, with resulting injury to plaintiff, is a proper party to this suit, thereby avoiding a multiplicity of suits. Each such party is but a cog in a wheel designed, made, and used for dishonest and improper purposes to plaintiff's detriment and consequent damage. "The fraud is one work, the steps to accomplish it are various." (9 Minn. 174.) The rule mentioned and sustained in our cases is in accord with the weight of authority elsewhere. Hutchins v. Nickerson, 212 Mass. 118, 98 N. E. 791; Fellows v. Fellows, 4 Cow. 682, 15 Am. D. 412; Tucker v. Foster, 154 Va. 182, 152 S. E. 376, 69 A. L. R. 220, and note going with that decision; Regester v. Regester, 104 Md. 359, 65 A. 12; 21 C. J. p. 318 (under title "Bills for relief against fraud") and cases under notes 85, 86, and 87; 27 C. J. p. 747 [§ 619]F, and cases under notes 70 to 78, inclusive.

The fact that plaintiff is suing in two different capacities as judgment creditor cannot place him in any worse position than if there were two separate individuals bringing this suit. We can see no objection on this ground, for it is well established that several creditors having distinct claims can join as plaintiffs in a single complaint brought to reach fraudulently conveyed property. North v. Bradway, *supra;* Steiner Land & Lbr. Co. v. King, 118 Ala. 546, 24 So. 35; Gamet & Ogden v. Simmons, 103 Iowa, 163, 72 N. W. 444; M. Ferst's Sons & Co. v. Powers, 64 S. C. 221, 41 S. E. 974; Cullen v. Walsh, 97 Misc. 177, 161 N. Y. S. 123; 27 C. J. p. 750 [§ 628]c, and cases under notes 18, 19, and 20.

■ It is also urged that the complaint fails to allege that Johnson was insolvent when these transfers were made or that he became insolvent by reason thereof; rather that, by inference at least, he was in fact solvent when he transferred the shares of stock to his wife and daughters in 1928 and 1931. The mere fact that a person

is solvent does not necessarily render him incapable of making conveyances or transfers fraudulent to his creditors. While solvency when transfer is made affords evidence against the claimed fraudulent purpose, it is after all only an item of evidence to be considered with all the other facts and circumstances of the case. 3 Dunnell, Minn. Dig. (2 ed. & Supps.) §§ 3860 and 3919. Wolford v. Farnham, 44 Minn. 159, 46 N. W. 295; Quinn v. Minneapolis T. M. Co. 102 Minn. 256, 113 N. W. 689; Walkow v. Kingsley, 45 Minn. 283, 47 N. W. 807. Important too is the fact that the transfers from husband to wife "are presumptively fraudulent as to existing creditors. The burden is on her to show good faith and a valuable consideration paid by her, or by some one in her behalf." 3 Dunnell, Minn. Dig. (2 ed. & Supps.) § 3859. As to the daughters, the transfers "are scrutinized closely by the courts," and when voluntarily made, "like all voluntary transfers," are "presumptively fraudulent." Id. § 3858.

The difficult question in this case relates to whether the complaint states a cause of action as against all defendants. Their argument on this phase is that it appears from the complaint that Johnson's wife and daughters received these transfers more than six years prior to the time of commencement of the present suit. It is true the complaint does not allege that said defendants' fraudulent conduct was not discovered within that period, in fact nothing is said respecting that matter at all. In this situation, then, the determinative question is, when did plaintiff's cause arise? When did the law afford him his remedy?

The suit is obviously what was a creditor's bill prior to the adoption of the code. Creditor's bills in equity, and today under the code, unless the law was changed by the uniform fraudulent conveyance act, were of two types. The first was where the judgment creditor sought to satisfy his judgment out of the equitable assets of the debtor which could not be reached by execution. The second was where property legally liable to execution had been fraudulently conveyed and the creditor attempted to have the conveyance set aside. Wadsworth v. Schisselbauer, 32 Minn. 84, 86, 19 N. W. 390. Furthermore, since the conveyance in fraud of creditors was

not valid at law, the legal remedy available was to levy and sell the interest of the debtor in the property and bring ejectment against the fraudulent grantee. Doland v. Burns Lbr. Co. 156 Minn. 238, 194 N. W. 636; 2 Mason Minn. St. 1927, § 8483 (1) (b) ; McClintock, Equity, p. 359, § 203. If the creditor sought to maintain a suit of the first type, although there was much variation among the states, in Minnesota he was required first to exhaust his remedy at law by the issuance of an execution and its return unsatisfied, for until then the remedy at law had not been shown to be inadequate. Moffatt v. Tuttle, 35 Minn. 301, 28 N. W. 509; see McClintock, Equity, p. 360, § 203. In the second type of suit it was the settled rule in this state that it was not necessary to issue an execution before assailing the conveyance. Wadsworth v. Schisselbauer, *supra*. As to the creditor the conveyance was voidable, and he was entitled to be placed in the same position as if it had never been made.

Under these established forms of relief, the law was well settled as to when the statute of limitations began to run in favor of the grantee. In the case of a bill to reach equitable assets generally, and clearly in Minnesota, execution and a return unsatisfied were necessary before a creditor could maintain his suit. Therefore, until the creditor complied with these prerequisites the statute of limitations did not commence to run. Weaver v. Haviland, 142 N. Y. 534, 37 N. E. 641, 40 A. S. R. 631; Montgomery Iron Works v. Capital City Ins. Co. 137 Ala. 134, 34 So. 210; Williams v. Commercial Nat. Bank, 49 Or. 492, 90 P. 1012, 91 P. 443, 11 L.R.A. (N.S.) 857; Ainsworth v. Roubal, 74 Neb. 723, 105 N. W. 248, 2 L.R.A. (N.S.) 988. If a bill of the second class was brought it became well established law in this state that the statute of limitations did not commence until the judgment was docketed. Rounds v. Green, 29 Minn. 139, 12 N. W. 454. So whether plaintiff here is bringing his suit based upon either thereof, we need not decide which, he is not barred by the statute under the rules established in our former cases. If the first type of suit is the basis of the plaintiff's cause, the statute did not begin to run until execution was returned unsatisfied on October 22, 1932; if of the second type, the statute did not begin to run until August 31, 1932, when judgment was recovered. It fol-

lows that the plaintiff's cause was not barred on October 25, 1937, unless a change occurred in our established law upon the enactment of the uniform fraudulent conveyance act in 1921, 2 Mason Minn. St. 1927, §§ 8475-8489.

■ In connection with the problem here presented the uniform act brings for solution the following questions: (1) Could plaintiff have assailed the 1928 transfer before he obtained a judgment, and, if so, was he obliged to pursue such a course under penalty of the statute of limitations running from the time the transfer could first be impeached? (2) Does the act abolish the time-honored practice of securing judgment and having execution returned unsatisfied before bringing suit to set aside a fraudulent conveyance?

2 Mason Minn. St. 1927, § 8483, provides that a creditor whose claim has matured may have a fraudulent conveyance (or transfer) set aside to the extent necessary to satisfy his claim or he may disregard the conveyance and levy or attach the property. Section 8475 defines a creditor as a person having a claim, whether matured or unmatured, liquidated or unliquidated, absolute, fixed, or contingent. While it has been argued that the word "creditor" in § 8483 should be construed as "judgment creditor" (20 Columbia L. Rev. 339, 340, but see Bridgman, Uniform Fraudulent Conveyance Act in Minnesota, 7 Minn. L. Rev. 453, 530, at 540), the courts which have considered the problem in light of the act have not adhered to such a view and have held a creditor can set aside a transfer of property, fraudulent as to him, although he has not obtained a judgment. Virgil State Bank v. Wahl, 56 S. D. 318, 228 N. W. 392; Hartford A. & I. Co. v. Jirasek, 254 Mich. 131, 235 N. W. 836; Lipskey v. Voloshen, 155 Md. 139, 141 A. 402; American Surety Co. v. Conner, 251 N. Y. 1, 166 N. E. 783, 65 A. L. R. 244, and note; see Morse v. Roach, 229 Mich. 538, 201 N. W. 471; contra, Hookway v. Hammons, 34 Ariz. 23, 267 P. 415 (court did not mention the uniform fraudulent conveyance act, Ariz. L. 1919, c. 131); see Lipman v. Manger, 185 Wis. 63, 200 N. W. 663 (the court did not mention the uniform fraudulent conveyance act, Wis. L. 1919, c. 470). Interesting and informative are the well reasoned and excellently writ-

ten articles by Glenn in 30 Columbia L. Rev. p. 202, *et seq.*; and McLaughlin, 46 Harvard L. Rev. p. 404 at p. 438, *et seq.*)

We are inclined to the view that the better reasoned cases permit a simple creditor to maintain suit against a grantee of fraudulently conveyed property. The definition of "creditor" in § 8475 is clearly broad enough to embrace a party without a judgment. Section 8484 grants to a creditor whose claim has not matured the right to apply to the court to set aside a fraudulent transfer by his debtor. Obviously such a proceeding could not be predicated upon a judgment. It does not seem sensible to say that a creditor whose claim has matured should be in any less advantageous position. The whole purpose of the enactment is aimed at the dishonest debtor and seeks to provide an orderly, efficient, and speedy remedy for the creditor. "The [uniform] act in its definition of a creditor seeks a rule of uniformity, and in so doing levels distinctions that at times had been the refuge of the dilatory debtor." Cardozo, C. J., in American Surety Co. v. Conner, 251 N. Y. 1, 7, 166 N. E. 783, 785, 65 A. L. R. 244, 248. (It has been pointed out that the abolition of imprisonment for debt, which included the issue of *capias* to hold the defendant to plea and judgment, thus requiring him to put up bail if he wished to go free, should have been compensated by some method to protect the creditor. Consequently it is common in this country for fraudulent conveyances to occur *pendente lite* with the danger of innocent purchasers cutting off the creditor. Glenn, Law of Fraudulent Conveyances, p. 121, § 83. Obviously this condition can be remedied by the construction adopted here.) The statute simply [251 N. Y. 7] abrogates "the ancient rule whereby a judgment and a lien were essential preliminaries to equitable relief against fraudulent conveyance." American Surety Co. v. Conner, *supra.* So it seems clear that the meaning of the statute is that a creditor without a judgment can sue to set aside a fraudulent conveyance. That construction has been adopted in other states under statutes permitting "creditors" to sue; for example, Combs v. Watson, 32 Ohio St. 228, and in Dawson Bank v. Harris, 84 N. C. 206, where the same result was reached by judicial construction of the code. It therefore follows that when plaintiff brought his action against

Johnson in November, 1928, he could have maintained suit also against the transferees of the stock, since the transfers were made June 30, 1928. But was he compelled to assert this method as his only remedy and right to relief under penalty of having the six-year statute of limitations run, 2 Mason Minn. St. 1927, § 9191, or could he, as he did here, proceed to judgment and execution before bringing suit to set aside the transfer? We think plaintiff could make an election and without penalty. (If he could do this with respect to the 1928 transfer, he could also adopt the old method to assail the other transfers made in 1931.)

While the fraudulent conveyance act is remedial and as such should be liberally construed, there is nothing in its language or stated purpose leading to the belief that it was intended to impair or limit the old practice under our long established legal system. As a matter of fact it seems arguable that § 8483 (1) (a) is broad enough to include the old procedure of entry of judgment and return of execution unsatisfied as well as the more modern relief given a simple creditor. Section 8483 (1) (b) recognizes the old legal remedy of a judgment creditor and extends this to a simple creditor. Consequently we can see no reason for believing the method resorted to and relied upon by plaintiff is prohibited or limited by the new act. Actually the act is a codification and an extension of our former law. The new act simply adds an efficient, optional, and additional remedy to a creditor who has not reduced his claim to judgment. If he has not reduced his claim to judgment he may now, by virtue of the act, protect his right by promptly instituting proceedings although he is only a simple creditor. But if he has a judgment against the grantor, he may still proceed as before. Such construction does not vest in the judgment creditor any new rights or remedies not theretofore his.

It has been held under statutory enactment allowing a simple creditor to set aside a fraudulent conveyance that the statute of limitations runs from the time the creditor could first assail it, Combs v. Watson, 32 Ohio St. 228; Ramsey v. Quillen, 73 Tenn. (5 Lea) 184. We do not think these cases should be followed because they bring about a result entirely inconsistent with the under-

lying objective of the uniform act, which is to enhance and not impair the remedies of the creditor. Why should the creditor be compelled in every case to commence suit against the grantee to set aside a transfer under penalty of having the statute of limitations run until he is certain of being one in fact? Often the asserted claim against the principal obligor might well be uncertain, and even speculative, or at least one in which the amount of recovery is very uncertain. A construction should not be adopted compelling a creditor who claims to be such to institute proceedings of this nature until the debtor's liability has been established by final judicial determination. It is apparent that such compulsion will exist in many cases if the creditor cannot proceed by the old method. In many cases the third party grantee will be saved the burden of defending a suit by one whose cause of action failed against his grantor.

Our fraudulent conveyance act expressly repeals G. S. 1913, §§ 7010 and 7013, and "inconsistent" acts (2 Mason Minn. St. 1927, § 8488). The expressly repealed sections relate (§ 7010) to trusts created for the benefit of the trustor, and (§ 7013) to property conveyed with intent to defraud the grantor debtor's creditors. To the extent mentioned the new act displaces the old. In this situation the rule to be applied is: "Where two acts are not in express terms repugnant, but the later act covers the whole subject-matter of the earlier, not purporting to amend it, and plainly shows that it was intended as a substitute for the earlier, it will operate as a repeal thereof, though all the provisions of the two may not be repugnant. But there must be unmistakable intent manifested on the part of the legislature to make the new act a substitute for the old and to contain all the law on the subject; for mere similarity in the provisions of the two statutes is not enough to effect a repeal, even though the similarity may be such as to cause confusion or inconvenience." 6 Dunnell, Minn. Dig. (2 ed. & Supps.) § 8926, and cases cited under note 15. We do not think there is here an "unmistakable intent" shown on the part of the legislature "to make the new act a substitute for the old and to contain all the law on the subject." We are fortified in this view by the fact that nothing

is said in the new act in any way limiting then existing remedies or the time within which to assert them. As has been said, this statute simply abrogates "the ancient rule whereby a judgment and a lien were *essential preliminaries* to equitable relief against a fraudulent conveyance," and that what it "seeks" is to level "distinctions that at times had been the refuge of the dilatory debtor." American Surety Co. v. Conner, 251 N. Y. 1, 7, 166 N. E. 783, 785, 65 A. L. R. 244. After all, the fraudulent grantor cannot complain, for as to him the obligation is a subsisting one until the statutory period has run against the judgment. As to his grantee, who holds only an apparent title, a mere cloak under which is hidden the hideous skeleton of deceit, the real owner being the scheming and shifty judgment debtor—what reason has he to complain when the six-year statute giving repose to the remedy has not expired since entry of judgment?

Lastly, defendants contend that this action should have been instituted by the personal representative of the Johnson estate. While it is true, as argued by them, that it is primarily for the personal representative to recover property of decedent's estate, Weis v. Kundert, Jr. 172 Minn. 274, 215 N. W. 176, yet, in the case of fraudulently conveyed property, the estate has no claim upon it because, as between the grantor and grantee, the transfer is valid, Redmond v. Hayes, 116 Minn. 403, 133 N. W. 1016, and usually is irrevocable although not intended to be so by the grantor. This is so since equity will not lend its aid either to a grantor who seeks to impeach the conveyance, McClintock, Equity, p. 33, § 24, or the personal representative suing for the benefit of his estate, 22 Minn. L. Rev. 429. At common law the majority of courts denied the representative the right to set aside a fraudulent conveyance even for the benefit of creditors. 14 Minn. L. Rev. 297. Under § 95 of the probate code (L. 1935, c. 72, 3 Mason Minn. St. 1938 Supp. § 8992-95), the personal representative can recover fraudulently conveyed property only if the property of the decedent available to pay his debts is insufficient. "Upon the application of any creditor and upon making the payment of or providing security for the expenses thereof as directed by the court, the representative shall prosecute

all actions necessary to recover the property." We think the statutory purpose is to protect the creditor rather than the estate. Property of the estate is not being meddled with by a stranger. The estate as such and its representative have no basis upon which to found a claim to such property. That the statute does not place the exclusive right to maintain the action in the hands of the representative was established by McCord v. Knowlton, 79 Minn. 299, 304, 82 N. W. 589, 591, where it was held that under G. S. 1894, §§ 4506, 4507 (essentially the same as 2 Mason Minn. St. 1927, §§ 8802, 8803, and the present § 95) a creditor could sue on his own behalf to set aside a fraudulent conveyance without joining the personal representative. "An administrator or executor may bring such actions, but is not bound to, unless furnished security. But this is not exclusive of the right of creditors to proceed independently." Plaintiff is clearly, in view of that decision, a proper party to maintain this suit.

We think the court erred in sustaining the demurrer, and its order in the premises is reversed.

