**PROTOCOMM CORP., Plaintiff,**

v.

**NOVELL, INC. et al., Defendants.**

**No. Civ.A. 98–3819.**

United States District Court,
E.D. Pennsylvania.

June 25, 1999.

David Smith, Christina Rainville, Philadelphia, PA, for plaintiff.

Jennifer H. Adams, Philadelphia, PA, David C. Franceski, Jr., Philadelphia, PA, for defendant.

## *MEMORANDUM*

LOWELL A. REED, Jr., Senior District Judge.

Before the Court is the motion to dismiss of defendants David L. Nelson, Cornelius A. Ferris, Premkumar Uppaluru, Aeneas Venture Corporation, Edelson Technology Partners II, L.P., Olivetti Holding, N.V., Technologies for Information & Publishing, L.P., ASCII Corporation, Cirrus Logic, Inc. and Intel Corporation (collectively referred to as the "Former Fluent Shareholders").[1] Based on the following, the motion will be denied.

## I. BACKGROUND

This case is the third generation lawsuit springing from a breach of contract dispute between plaintiff ProtoComm Corporation ("ProtoComm") and Fluent, Inc., now Novell Advanced Services ("Fluent"). In January of 1993, ProtoComm filed a lawsuit against Fluent alleging a breach of an agreement to develop a video server software. (*"ProtoComm I"*). On July 24, 1996, a jury returned a verdict in *ProtoComm I* in favor of ProtoComm and against Fluent for $12.5 million. The verdict was affirmed by the Court of Appeals for the Third Circuit on October 29, 1997.

The details of *ProtoComm I* and the lawsuit that followed, *ProtoComm II*, have

been extensively reported by this Court and will not be repeated here. The following facts are pertinent to the resolution of the pending motions and are gleaned from the allegations of the complaint in this litigation, *ProtoComm III*.

ProtoComm alleges that while litigation in *ProtoComm I* was pending, Novell, Inc. ("Novell") and Fluent made plans for Novell's acquisition of Fluent. In letters of intent dated in the spring of 1993, Novell and Fluent indicated that Novell would acquire all the assets and obligations of Fluent through a merger. (Complaint ¶¶ 21–23). According to an agreement approved by Fluent's board of directors on June 4, 1993, Fluent would be the surviving corporation of the merger as a wholly owned subsidiary of Novell. (Complaint ¶ 24). The agreement also provided that as a condition precedent to the merger, *ProtoComm I* must have been resolved. (Complaint ¶ 25). The shareholders of Fluent were informed of this condition precedent in a proxy statement around June 4, 1993. (Complaint ¶ 26).

ProtoComm alleges that despite this condition precedent, the merger was consummated on July 7, 1993. (Complaint ¶ 28). However, the merger was restructured as a stock acquisition/merger, whereby Novell purchased all of Fluent's stock for approximately $17.5 million which was paid directly to the shareholders, not to Fluent's treasury. (Complaint ¶ 29). ProtoComm alleges that Novell took complete control over Fluent's assets and made all key decision with respect to Fluent's business after the stock acquisition. (Complaint ¶ 57).

ProtoComm alleges that Novell's acquisition of Fluent was deliberately structured to leave Fluent with no assets to meet the potential judgment against it in *ProtoComm I*. (Complaint ¶ 31). As a re-

1. Defendants FIP Associates, Ltd. and FIP II, Ltd. ("the FIP defendants") joined in the motion to dismiss of the Former Fluent Shareholders. (Document No. 15). ProtoComm responded to the joinder with no objection.

(Document No. 22). While the Court considered the motion as on behalf of the FIP defendants, for the sake of simplicity, the Court will refer to the motion as the motion by the Former Fluent Shareholders only.

sult of the merger, Fluent was left as "a shell corporation, wholly controlled by Novell, with no assets, no employees, no meaningful business activities of its own, no board of directors, and no observance of corporate formalities." (Complaint ¶ 35).

Count I and Count V allege claims against the Former Fluent Shareholders and are the only counts at issue in the pending motion. Count I is a claim for fraudulent transfer. ProtoComm alleges that the actions of Novell, Fluent, and the Former Fluent Shareholders were done with "the actual intent to hinder, delay or defraud ProtoComm in the collection of its $12.5 million judgment against Fluent." (Complaint ¶ 38). Further, ProtoComm alleges that the defendants knew that restructuring the merger into a stock acquisition would leave Fluent with "no or unreasonably small assets and capital and with no ability to pay its obligation to ProtoComm." (Complaint ¶ 40).

Count V is a claim for wrongful dividends. ProtoComm alleges that although the transaction was characterized as a stock acquisition, in reality, Novell acquired all of the assets of Fluent without paying money into Fluent's treasury. (Complaint ¶ 70). Because Novell paid the money to the shareholders of Fluent, ProtoComm alleges that the payment amounted to a payment of dividends that were not paid out of Fluent's surplus or net profits and which left Fluent with no assets, with unreasonably small capital, and unable to meet its obligation to ProtoComm. (Complaint ¶¶ 72–74).

## II. PRINCIPAL ARGUMENTS OF THE PARTIES

First, the Former Fluent Shareholders argue that the claims against them should be dismissed as barred by the statute of limitations. In addition, the Former Fluent Shareholders argue that the allegations against them for fraudulent conveyance do not state a claim upon which relief may be granted because ProtoComm did not allege a transfer of assets that involved the Former Fluent Shareholders, only a sale of stock. Similarly, the Former Fluent Shareholders argue that the claim for wrongful dividend should be dismissed for failure to state a claim because ProtoComm did not allege that Fluent paid a dividend or distribution to them in connection with the stock transaction.

ProtoComm contends that its claims are not barred by the statute of limitation because the applicable two year limitation period began to run when it obtained a judgment against Fluent and not from the date of the alleged fraudulent conveyance. As for the claims for fraudulent conveyance and wrongful dividend, ProtoComm argues that while the transaction between Novell and the Former Fluent Shareholders was a sale of stock only, the court should collapse all of the transactions among Fluent, the Former Fluent Shareholders, and Novell into one integrated transaction to determine whether its allegations are sufficient to state a claim.

## III. STANDARD FOR A MOTION TO DISMISS[2]

Rule 12(b) of the Federal Rules of Civil Procedure provides that "the following defenses may at the option of the pleader be made by motion: (6) failure to state a claim upon which relief can be granted." In deciding a motion to dismiss under Rule 12(b)(6), a court must take all well pleaded facts in the complaint as true and view them in the light most favorable to the

---

**2.** ProtoComm contends that the Court should consider converting the motion to dismiss into one for summary judgment and attaches evidentiary material to its response in support of its arguments. (Pl.'s Response at 11–12; Pl.'s Surreply at 20–21). The defendants object on the ground that the their motion did not refer to matters outside the pleading.

(Defs.' Reply at 2 n. 1). Because the Court finds that it is able to dispose of the motion to dismiss without reference to materials outside the pleadings and the defendants were not given an opportunity to present evidence in support of their motion, I will not convert the motion into one for summary judgment.

plaintiff. *See Jenkins v. McKeithen*, 395 U.S. 411, 421, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969). A complaint should be dismissed if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984).

## IV. ANALYSIS[3]

### A. Pennsylvania Uniform Fraudulent Conveyances Act[4]

Section 359 of PAUFCA,[5] entitled "Rights of creditors whose claims have matured," provides in pertinent part:

(1) Where a conveyance or obligation is fraudulent as to a creditor, such creditor, when his claim has matured, may, as against any person except a purchaser for fair consideration without knowledge of the fraud at the time of the purchase, or one who has derived title immediately or mediately from a purchaser:

(a) Have the conveyance set aside or obligation annulled to the extent necessary to satisfy his claim; or

(b) Disregard the conveyance, and attach or levy execution upon the property conveyed.

Section 360 of PAUFCA,[6] entitled "Rights of creditors whose claims have not matured," provides:

Where a conveyance made or obligation incurred is fraudulent as to a creditor whose claim has not matured, he may

proceed, in a court of competent jurisdiction, against any person against whom he could have proceeded had his claim matured, and the court may:

(a) Restrain the defendant from disposing of his property;

(b) Appoint a receiver to take charge of the property;

(c) Set aside the conveyance or annul the obligation; or

(d) Make any order which the circumstances of the case require.

Four sections of the PAUFCA detail the circumstances under which a conveyance will be deemed fraudulent to creditors. Section 354 provides: "Every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent, is fraudulent as to creditors, without regard to his actual intent, if the conveyance is made or the obligation is incurred without a fair consideration." Section 355 provides:

Every conveyance made without fair consideration, when the person making it is engaged, or is about to engage, in a business or transaction for which the property remaining in his hands after the conveyance is an unreasonably small capital, is fraudulent as to creditors, and as to other persons who become creditors during the continuance of such business or transaction, without regard to his actual intent.

Section 356 provides:

Every conveyance made and every obligation incurred without fair consider-

---

3. In its complaint and its response to the motion for summary judgment, ProtoComm characterizes its claims as an action on a judgment. However, ProtoComm has made no allegation that it has a judgment against the Former Fluent Shareholders; thus, the claims of ProtoComm will not be analyzed as claims to enforce a judgment in the disposition of the motion to dismiss.

4. The Pennsylvania Uniform Fraudulent Conveyances Act ("PAUFCA"), 39 Pa.Stat. §§ 351 to 362, was repealed and replaced by the Pennsylvania Uniform Fraudulent Transfer Act ("PAUFTA"), 12 Pa.Cons.Stat. §§ 5101 to 5110, which went into effect sixty days after

December 3, 1993. In the Historical and Statutory Notes to § 5101, the PAUFTA provides that it applies to transfers that occurred on or after its effective date; thus, the PAUFCA, not the PAUFTA applies to the alleged fraudulent conveyance in question.

5. This section as quoted is identical to § 9 of the Uniform Fraudulent Conveyance Act. *See* 39 Pa.Stat. § 359, historical and statutory notes (citing 9A Uniform Laws Annotated).

6. This section is identical to § 10 of the Uniform Fraudulent Conveyance Act. *See* 39 Pa. Stat. § 360, historical and statutory notes (citing 9A Uniform Laws Annotated).

ation, when the person making the conveyance or entering into the obligation intends or believes that he will incur debts beyond his ability to pay as they mature, is fraudulent as to both present and future creditors.

Section 357 provides:

Every conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors.

## B. Statute of Limitations

The parties agree that the applicable statute of limitations under Pennsylvania law is 42 Pa.Cons.Stat. § 5524(7), setting a two year limitation period for actions sounding in fraud. *See In re Sverica Acquisition Corp.*, 179 B.R. 457, 469–70 (E.D.Pa.1995). The parties dispute, however, when the limitation period began to run on ProtoComm's claims, or when the causes of action accrued. The Former Fluent Shareholders contend that the limitations period for claims under the PAUFCA "begins to run from the date of the fraudulent conveyance complained of, unless such fraud has been actively concealed by the wrongdoer." *In re Ambulatory Medical & Surgical Health Care, Inc.*, 187 B.R. 888, 901 (W.D.Pa.1995); *see also In re Glenn*, 108 B.R. 70, 74 (W.D.Pa.1989). ProtoComm argues that under Pennsylvania law generally, the limitation period does not begin to run on a cause of action until the right to institute and maintain the suit arises, and "[t]he true test in determining when a cause of action arises or accrues is to establish the time when the plaintiff could have first maintained the action to a successful conclusion." *Kapil v. Association of Pennsylvania State College and University Faculties*, 504 Pa. 92, 470 A.2d 482, 485 (Pa.1983). Thus, ProtoComm contends, the limitation period did not begin to run until the date that the judgment was entered in its favor against Fluent because not until then did it have a "mature claim" to bring suit under § 359 of PAUFCA.

It appears from the parties' briefs and the Court's own research that there is no Pennsylvania case or case applying Pennsylvania law that directly addresses the issue of when the statute of limitations begins to run when a conveyance alleged to be fraudulent occurs during pending litigation which later establishes a debtor-creditor relationship by a final judgment. The cases cited by the defendants do not involve a creditor who waited to sue under § 359 on a fraudulent conveyance that occurred during pending litigation until a final judgment was rendered.

ProtoComm argues that in the absence of authority in Pennsylvania, the Court should consider case law from other jurisdictions applying the PAUFCA or the UFTA. Because no Pennsylvania court has directly addressed this issue, this Court, sitting in diversity, must predict what the Supreme Court of Pennsylvania would hold on this issue. *See Borman v. Raymark Industries. Inc.*, 960 F.2d 327, 331 (3d Cir.1992). In doing so, the Court may consider decisions on the issue by courts in other jurisdictions. *See Koppers Co., Inc. v. Aetna Casualty and Surety Co.*, 98 F.3d 1440, 1445 (3d Cir.1996) (noting that a federal court sitting in diversity may consider " 'analogous decisions, considered dicta, scholarly works, and any other reliable data tending convincingly to show how the highest court in the state would decide the issue at hand' ") (quoting *McGowan v. University of Scranton*, 759 F.2d 287, 291 (3d Cir.1985)).

In *Cortez v. Vogt*, 52 Cal.App.4th 917, 60 Cal.Rptr.2d 841 (1997), the plaintiff sued the defendants under the UFTA as adopted by California for a transfer that had occurred during the pendency of earlier litigation against the defendants for wrongful discharge. The defendants contended that the plaintiff's UFTA claim was time-barred because he did not file it with-

in the statutory period measured from the date of the alleged fraudulent transfer.

The California Court of Appeal held that the plaintiff's claim was not time-barred. The court noted that a "key feature of the UFTA is that a creditor is permitted but not required to maintain an action to annul a fraudulent conveyance before his debt has matured." 60 Cal.Rptr.2d at 849. Similarly, the *Cortez* court noted that "it is clear the main thrust of the UFTA, as with the Uniform Fraudulent Conveyance Act, is that the Act permits, but does not require, a creditor to bring suit to set aside a fraudulent transfer before the claim has matured." *Id.* at 850. In light of this flexibility in the UFTA, the court concluded that "the fact that the creditor may pursue the unmatured claim to judgment, followed by a suit to set aside the fraudulent transfer, suggests that it would be inappropriate to begin the running of the limitations period for the fraudulent transfer action before the creditor choosing to pursue a judgment actually obtains the judgment." *Id.* at 850.

In addition to examining the provisions of the statute, the *Cortez* court considered the practicalities and efficiencies of bringing suit under UFTA. The court noted that:

> [i]f the limitations period on the fraudulent transfer action begins to run before final judgment in the underlying creditor action, the creditor may be required to file and prosecute both actions to protect against the expiration of the limitations period; if the creditor action is not successful the fraudulent transfer action will be dismissed or severed and will have resulted in needless effort and expense to both parties and the court.

*Id.* Indeed, the *Cortez* court noted, " '[w]hy should the creditor be compelled in every case to commence suit against the grantee to set aside a transfer under penalty of having the statute of limitations run until he is certain of being one in fact?' " *Id.* at

853 (quoting *Lind v. O.N. Johnson Co.*, 204 Minn. 30, 282 N.W. 661, 667 (1938)).

Although *Cortez* pertained to an action under the UFTA, the analysis performed by the court applies to PAUFCA as well and is persuasive. PAUFCA, like UFTA, provides relief to creditors whose claims have matured in § 359 and those whose claims have not matured in § 360. *See Cortez*, 60 Cal.Rptr.2d at 851 (noting that "the remedies under the UFTA are a carryover of the remedies of the Uniform Fraudulent Conveyances Act"). In addition, other factors weigh in favor of following the reasoning of *Cortez*. By July of 1995, two years after the alleged fraudulent conveyance, ProtoComm had not yet obtained a judgment against Fluent in the underlying case. Section 359 provides a distinct remedy to a creditor whose claim has matured, the right to attach or levy on the property. If ProtoComm were required to file suit within two years of the alleged fraudulent transfer, it could not have availed itself of the rights conveyed in § 359 because at that point its claim had not yet matured. Thus, it would have been foreclosed from pursuing the remedy set forth in PAUFCA for creditors who have reduced their claims to judgment.

Another factor discussed by the *Cortez* court was that under the common law in California before the adoption of the PAUFCA, the limitation period on an action for fraudulent conveyance that occurred during the pendency of litigation establishing the debtor's liability to a creditor began to run when a judgment on the underlying debt became final. While it appears that under Pennsylvania common law before the PAUFCA, the limitations period began to run at the time of the alleged fraudulent conveyance, this does not militate that the same rule applies to this particular claim under the PAUFCA. First, it is clear that the PAUFCA was intended to give remedies to creditors in addition to what existed at common law. *See In re Sverica*, 179 B.R. at 467 ("Under the PAUFCA, however, creditors in Penn-

sylvania now have a choice between the equitable remedy of setting a fraudulent conveyance aside to the extent necessary to satisfy their claims, or the legal remedy of disregarding the conveyance altogether and attaching or levying execution upon the conveyed property."); *In re Penn Packing Co.*, 42 B.R. 502, 506 n. 5 (E.D.Pa. 1984) ("The [PAUFCA] simply adds an efficient, optional, and additional remedy to a creditor who has not reduced his claim to judgment. The underlying objective of the uniform act is to enhance and not impair the remedies of the creditor."). Because the PAUFCA allows creditors the option of bringing suit before or after their claim has been reduced to judgment, it is logical that the statute of limitations on a mature claim would begin to run after the claim became mature, or was reduced to judgment. Second, as noted above, it appears that no court in Pennsylvania, before the adoption of the PAUFCA or since, has addressed the question of when the limitation period begins to run on a fraudulent conveyance that occurs during the pendency of a lawsuit to determine the presence of a creditor-debtor relationship. Thus, there is no guidance as to what the Pennsylvania common law rule would have been on a claim of this type.

 Given that generally under the law of Pennsylvania, actions do not accrue and the statute of limitations does not begin to run until "the occurrence of the final significant event necessary to make the claim suable," *Mack Trucks, Inc. v.*

*Bendix–Westinghouse Automotive Air Brake Co.*, 372 F.2d 18, 20 (3d Cir.1966) (citing Pennsylvania law), the flexibility of the PAUFCA in allowing creditors to bring suits before or after their claims have matured, the persuasive authority of *Cortez*, and the dictate of the PAUFCA that it "shall be so interpreted and construed as to effectuate its general purposes to make uniform the law of those States which enact it," 39 Pa.Stat. § 362, this Court concludes that the Supreme Court of Pennsylvania would hold that the two-year limitation period did not begin to run until judgment was entered in favor ProtoComm and against Fluent on July 24, 1996. Thus, as ProtoComm filed its complaint in this case on July 22, 1998, ProtoComm's claims are timely and are not barred by the statute of limitations.

### C. Count I: Fraudulent Conveyance

 There is no real dispute between the parties that the law of Pennsylvania should apply to ProtoComm's claim for fraudulent conveyance.[7] The Former Fluent Shareholders' first argument is that Count I should be dismissed on that ground that because no assets of the debtor, Fluent, were transferred in the stock acquisition between Novell and the Former Fluent Shareholders, the claim does not fall within PAUFCA. The Former Fluent Shareholders contend that in order to state a claim under PAUFCA, ProtoComm must allege that the debtor, Fluent, conveyed its assets to defraud its creditor,

7. The Former Fluent Shareholders attack ProtoComm's fraudulent conveyance claim under Pennsylvania law. While ProtoComm argues that Pennsylvania law should apply, it notes that both Pennsylvania and Massachusetts have an interest in the litigation.

As a district court sitting in diversity, this Court must apply the choice of law rules of the forum in which it sits. *See Shuder v. McDonald's Corp.*, 859 F.2d 266, 269 (3d Cir. 1988). If more than one state has an interest in the dispute between the parties, the court must determine whether there is an "actual conflict," that is, whether the differences in the interested states' laws will have a significant effect on the outcome of the case, or if

only a "false conflict" is present, that is, application of either states' law would obtain essentially the same result. *See Hyde Athletic Industries, Inc. v. Continental Casualty Company*, 969 F.Supp. 289, 294 (E.D.Pa.1997) (citing *Williams v. Stone*, 109 F.3d 890, 893 (3d Cir.1997)). As both Pennsylvania and Massachusetts have adopted the provisions of the UFCA that are in issue here, the Court finds that there is little chance for an actual conflict between these two forums. In addition, no party is objecting to the application of Pennsylvania law. Thus, this Court will apply the law of Pennsylvania to ProtoComm's fraudulent conveyance claim.

ProtoComm. The Former Fluent Shareholders argue that ProtoComm has only alleged a stock acquisition between Novell and the Former Fluent Shareholders, which did not constitute a conveyance by Fluent nor did it affect the assets of Fluent.

ProtoComm argues that it has sufficiently alleged a "conveyance" because the stock transaction was only one facet of the complete transaction among the Former Fluent Shareholders, Fluent, and Novell. ProtoComm argues that this Court should follow a body of cases from the Third Circuit and beyond in which courts have looked past the form of the transaction to its substance in assessing whether fraud has occurred. *See United States v. Tabor Court Realty Corporation,* 803 F.2d 1288 (3d Cir.1986); *MFS/Sun Life Trust–High Yield Series v. Van Dusen Airport Services Co.,* 910 F.Supp. 913, 934 (S.D.N.Y. 1995) ("Thus, an allegedly fraudulent conveyance must be evaluated in context; where a transfer is only a step in a general plan, the plan must be viewed as a whole with all its composite implication."); *In re Bay Plastics, Inc.,* 187 B.R. 315, 329 (C.D.Cal.1995) ("If ... there is evidence that the parties knew or should have known that the transaction would deplete the assets of the company, the Court should look beyond the formal structure."). In *Tabor Court,* the Court of Appeals for the Third Circuit, applying PAUFCA to a leveraged buy-out ("LBO"), found that although two separate exchanges occurred among the lender, borrowing companies, and the shareholders selling their stock, the exchanges would be considered as one integral transaction for the purposes of determining fraud. 803 F.2d at 1302 (agreeing with the district court's conclusion that "[t]he $4,085,000 in IIT loan proceeds which were lent immediately by the borrowing companies to Great American were merely passed through the borrowers to Great American and ultimately to the selling stockholders and cannot be deemed consideration received by the borrowing companies" (internal quotation omitted)).

The Former Fluent Shareholders argue that *Tabor Court* and other cases in which complex transactions have been collapsed involved LBOs, which render them inapposite to this case. I find that the reasoning behind collapsing complex transactions in the LBO context is equally applicable in this case where ProtoComm has alleged that the transactions among the defendants were part of a plan to place the assets of Fluent out of ProtoComm's reach. *See In re Lease–A–Fleet, Inc.,* 155 B.R. 666, 676 (E.D.Pa.1993) (analogizing to *Tabor Court* because "[t]he transfers from the Debtor to the Goodways were not isolated, but were driven by transfers from Robins to the Debtor and were accompanied by transfers from the Goodways to Robins. Each of the circular financial transactions between the parties in issue must therefore be collapsed into one transaction to appreciate their impact on the Debtor" under PAUFCA). Further, Pennsylvania courts have considered the totality of the circumstances in determining whether conveyances are fraudulent outside the LBO context. *See Alloway v. Martin,* 434 Pa.Super. 518, 644 A.2d 201, 203 (1994) ("Since fraud is usually denied, it must be inferred from all facts and circumstances surrounding the conveyance, including the relationship of the parties."); *Sheffit v. Koff,* 175 Pa.Super. 37, 100 A.2d 393, 395 (1953) (noting that fraud may be inferred from the surrounding facts and circumstances, including subsequent conduct).

▪ In its complaint, ProtoComm alleges that the transactions among the defendants were structured to avoid paying any judgment to ProtoComm, that Novell received "all of the business, assets, and obligations of Fluent," and that Fluent was left without any assets to satisfy the judgment. (Comp. at ¶¶ 10, 28). Thus, I conclude that ProtoComm may be able to prove a set of facts consistent with its pleadings to show that the stock transac-

tion between the Former Fluent Shareholders and Novell was only a part of a complex transaction that transferred the assets of Fluent to Novell, paid money to the shareholders and left Fluent insolvent, that would convince this Court to treat the transactions among the Former Fluent Shareholders, Fluent, and Novell as one integrated transaction for the purposes of ProtoComm's claim of fraudulent conveyance.

Second, the Former Fluent Shareholders attack the sufficiency of ProtoComm's allegations under PAUFCA. Under §§ 354, 355, and 356, the constructive intent provisions of PAUFCA, a plaintiff must allege that inadequate consideration was received by the debtor for the conveyance. In addition, under § 354, a plaintiff must allege that the debtor was insolvent at the time of the transfer or became insolvent as a result thereof. Under § 355, a plaintiff must also allege that the debtor was left with unreasonably small capital after the transfer. Under § 356, a plaintiff must allege that the debtor was aware that it was unable to pay future debts as they became due as a consequence of the transfer.

The Former Fluent Shareholders argue that ProtoComm did not allege and cannot allege that Fluent, the debtor, received inadequate consideration under the terms of the transaction because Fluent received *no* consideration for the stock transaction. ProtoComm clearly alleges in ¶ 29 of the complaint that Fluent did not receive any money as a result of the stock transaction between Novell and the Former Fluent Shareholders. As discussed above, ProtoComm may be able to prove a set of facts that would establish the stock transaction between Novell and the Former Fluent Shareholders was an integral part of that the transfer of assets from Fluent to Novell. If so, the fact, as the Former Fluent Shareholders contend, that Fluent received no money in its treasury as a result of this collapsed transaction would bolster ProtoComm's claim for fraudulent convey-

ance, not defeat it. Thus, the Court concludes that ProtoComm has adequately plead that Fluent received inadequate consideration as a result of the merger.

Alternatively, the Former Fluent Shareholders argue that ProtoComm has not alleged that Fluent was insolvent at the time of the stock transaction or became insolvent as a result thereof, that the transaction left Fluent will unreasonably small capital, or that Fluent was aware it was unable to pay future debts because of the stock transaction, which is required under §§ 354, 355, 356 of PAUFCA. In short, the Former Fluent Shareholders argue that ProtoComm cannot state a claim under any of these provisions because the stock transaction left Fluent's assets unaffected.

"Insolvency" is defined in PAUFCA as the point "when the present, fair, salable value of [a person's] assets is less than the amount that will be required to pay his probable liability on his existing debts as they become absolute and matured." 39 Pa.Stat. § 352. ProtoComm alleges that the transaction among the Former Fluent Shareholders, Fluent, and Novell left Fluent as a shell corporation with unreasonably small capital and unable to pay its obligations to ProtoComm. (Complaint ¶¶ 35, 40). If ProtoComm is able to establish that the transactions among the defendants should be collapsed, it may also be able to prove, consistent with its allegations that Fluent's assets were depleted so as to support a cause of action under §§ 354, 355, or 356.

Under § 357, the actual intent provision of PAUFCA, a plaintiff must allege that the conveyance was made with the actual intent to hinder, delay, or defraud present or future creditors. In attacking this claim, the Former Fluent Shareholders reiterate their argument that ProtoComm did not allege that assets were distributed from Fluent in the stock

transaction.[8] ProtoComm specifically alleges that the Former Fluent Shareholders, Fluent, and Novell acted with actual intent to hinder, delay, and defraud ProtoComm. (Complaint at ¶ 38). Again, if ProtoComm can establish that the transactions among the defendants should be collapsed, I conclude that the ProtoComm may be able to prove a set of facts consistent with its allegations to establish that the Former Fluent Shareholders, Fluent, and Novell acted with actual intent to defraud ProtoComm. Thus, the allegations of the complaint are sufficient to state a claim under § 357.

### D. Count V: Wrongful Dividends

The Former Fluent Shareholders argue that Count V of the complaint should be dismissed because the stock transaction did not affect the assets of Fluent and thus, Fluent did not make a dividend distribution to the shareholders.

■ The parties agree, as does the Court, that Delaware law applies to ProtoComm's claim for wrongful dividends, as Pennsylvania follows the rule that the law of the state of incorporation determines "the existence and extent of the liability of a shareholder for ... the payment of debts of the corporation." *In re School Asbestos Litigation,* 1993 WL 209719, *3 (E.D.Pa. June 15, 1993) (citing *Broderick v. Stephano,* 314 Pa. 408, 171 A. 582, 583 (1934)).

Under 8 DelCode Ann. § 170(a), a corporation may pay dividends upon the shares of its capital stock "either (1) out of its surplus ..., or (2) in case there shall be no such surplus, out of its net profits...." Under 8 Del.Code Ann. § 173,

"[n]o corporation shall pay dividends except in accordance with this chapter." Section 174 provides that "[i]n case of any wilful or negligent violation of ... [section] 173 of this title, the directors under whose administration the same may happen shall be jointly and severally liable ... to [the corporation's] creditors in the event of its dissolution or insolvency."[9]

■ ProtoComm argues that for the purposes of analyzing its wrongful dividends claim, the transaction among the Former Fluent Shareholders, Fluent, and Novell should be collapsed into one integrated transaction, as in the fraudulent conveyance context. *See Crowthers McCall Pattern, Inc. v. Lewis,* 129 B.R. 992, 1000–1001 (S.D.N.Y.1991) (denying a motion to dismiss a claim for unlawful dividends under Delaware law because the "economic substance" of the claim when the transactions were collapsed, rather than the form of the transactions, brought it within the purview of § 173). ProtoComm alleges that the Former Fluent Shareholders, rather than Fluent's treasury, received the consideration for the transfer of Fluent's assets to Novell, a transaction which essentially paid a dividend to the Former Fluent Shareholders and left Fluent insolvent. (Complaint ¶¶ 72–74). The Court concludes that ProtoComm may be able to establish that the stock transaction by the Former Fluent Shareholders and Novell should be collapsed with the transfer of assets from Fluent to Novell such that the money paid to the Former Fluent Shareholders may be considered a wrongful dividend in sup-

---

8. The Former Fluent Shareholders also argue that ProtoComm only alleged conclusory "badges of fraud" in its complaint, which are insufficient to state a claim for actual intent under § 357. Under Pennsylvania law, "intent to hinder, delay, or defraud creditors may be inferred," and "[d]irect evidence is not necessary to prove 'actual intent.'" *Tabor Court,* 803 F.2d at 1304. ProtoComm alleged several recognized badges of fraud, *see In re Lease–A–Fleet,* 155 B.R. at 674, as well as specifically alleging that the defen-

dants acted with actual intent. These allegations are sufficient to state a claim upon which relief may be granted under § 357.

9. It is unclear how this section, which imposes liability on the directors of a corporation, is applicable to all of the Former Fluent Shareholders, only some of whom were directors of Fluent (Complaint ¶ 27). However, because the parties did not raise this issue, the Court will not address it at this juncture.

port of its claim. Thus, the allegations are sufficient to survive this motion to dismiss.

Alternatively, the Former Fluent Shareholders contend that even if the money received by the Former Fluent Shareholders is considered a dividend, under *Johnston v. Wolf,* ProtoComm lacks standing to sue for wrongful dividends because it was not a creditor of Fluent at the time the alleged dividend was made. 487 A.2d 1132 (Del.1985). ProtoComm argues that *Johnston* is distinguishable in that the creditors there had no claim against the pre-merger corporation before it went out of existence; here, ProtoComm argues, it had a claim against Fluent before its acquisition by Novell in July of 1993.

■ In *Johnston,* the Supreme Court of Delaware held that the plaintiffs did not have standing to pursue a claim for wrongful dividends under § 174 because the plaintiffs were not creditors of the defendant in its pre-merger form. The court held that two of the plaintiffs were not "creditors" under § 174 because they did not have a claim against the company before the merger occurred. *See id.* at 1136. Thus, the plaintiffs did not have standing to pursue an action against the directors of the pre-merger company under § 174. *Id.* However, ProtoComm did have a claim against Fluent before the alleged wrongful dividend took place; in fact, the parties were involved in litigation over the claim. Thus, it is not beyond doubt that Proto-Comm does not have standing as a creditor under § 174 and thus, the claim for wrongful dividends will not be dismissed on this ground.

■ Further, ProtoComm argues that it has standing to pursue a claim for wrongful dividends under 8 Del.Code § 325, which provides that a creditor may bring an action against shareholders who are liable for the corporation's debt after first obtaining a judgment and an unsatisfied execution against the corporation. *See Pinellas County v. Great American Industrial Group, Inc.,* 1991 WL 259020, *3 (N.D.Ill.Dec.2, 1991) (noting that a creditor seeking relief under Delaware law for unlawful dividend distributions against corporate shareholders may bring a claim under § 325 or the common law of Delaware). The Former Fluent Shareholders contend that because § 325 applies only to current stockholders of a corporation, ProtoComm cannot bring a claim for wrongful dividends against them because they have not been shareholders since 1993. However, the Former Fluent Shareholders provide no case or other authority to support their position that § 325 applies only to current stockholders, and the Court finds no support for their argument in the language of § 325. Thus, the Court concludes that the Former Fluent Shareholders' argument is not a basis to dismiss ProtoComm's claim for wrongful dividends.[10]

## V. CONCLUSION

Based on the foregoing, the motion to dismiss will be denied. An appropriate Order follows.

---

10. The Former Fluent Shareholders also argue that the wrongful dividends claim is time-barred under the applicable two-year statute of limitations. Based on the reasoning above regarding when the limitation period starts to run on a fraudulent conveyance claim under these circumstances and 8 Del.Code § 325(b), which provides that suit shall not be brought by a creditor against a shareholder until judgment is obtained against the corporation, I conclude that the Former Fluent Shareholders have not established that ProtoComm's wrongful distribution claim is time-barred.